## SPRING CANYON COAL CO. v. COMMISSIONER OF INTERNAL REVENUE.
### Nos. 256, 257.

Circuit Court of Appeals, Tenth Circuit.
Sept. 5, 1930.

See, also (C. C. A.) 38 F.(2d) 764.

John Enrietto, of Washington, D. C. (Charles D. Hamel, Lloyd Anderson, and Hamel & Doyle, all of Washington, D. C., on the brief), for petitioner.

Morton Poe Fisher, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. S. Franklin, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The Workmen's Compensation Law of Utah (Comp. Laws Utah 1917, §§ 3061–3165 as amended) requires certain employers to pay certain compensation to injured employees. To secure the employees in such compensation, the statute gives an employer the option to (1) insure itself against liability to its employees either in the state insurance fund, or a private insurance company; or (2) "by furnishing annually to the commission satisfactory proof of financial ability to pay direct the compensation in the amount and manner and when due as provided for in this Act. In the latter case the commission may in its discretion require the deposit of acceptable security, indemnity or bond to secure the payment of compensation liabilities as they are incurred." Comp. Laws 1917, § 3114, as amended by Laws 1921, c. 67, § 1.

The petitioner "elected to become a self-insurer" about July 1, 1919; the commission approved, but required a $50,000 surety bond as a guaranty of its ability to respond to its obligations under the law. At the same time, apparently, the petitioner established the fund hereafter referred to. On November 19, 1920, the Industrial Commission issued its special order directed to petitioner, reciting that the petitioner had previously been authorized "to pay compensation * * * direct to its employees and become what is known as a self-insurer"; that it had been directed "to set up reserves for the purpose of such payments in an amount equal to the premiums that would be paid if said com-

pany were insured in the State Insurance Fund"; that coal mining was a hazardous business and the commission desired to protect injured employees; it was therefore ordered that the petitioner "set aside an amount of money equal to that which would be required as premiums from said Company were it insured with The State Insurance Fund, said amount to be used for the payment of compensation, medical and other benefits of the Workmen's Compensation Act and for such incidental expenses as may be necessary for the proper administration and carrying out of such requirements; and * * * [that it] * * * continue to set up such reserve until the further action of this Commission either modifying or annulling this Order."

The petitioner established a "Welfare or Compensation Insurance Fund" and together with two other employers "employed one F. D. Brown * * * to assume charge of all administrative duties" in connection with such funds. Brown did not intermingle the funds of his three employers, but did set up a separate office and organization; periodically he rendered a statement to his employers of the amounts required to be set aside; the employers gave him checks therefor, and petitioner's checks were deposited in a separate bank account denominated "the Spring Canyon Welfare Fund." From this fund, Brown paid claims of employees and expenses of administration, and nothing else. Earnings accruing to the fund were added thereto. During the years in question, the additions to the fund exceeded the disbursements. The petitioner carried the balance in the fund as an asset, offset by a charge to reserve for insurance. During the years 1920 and 1921, when invested capital was a factor in computing taxes, the respondent included the balance in the fund as a part of the invested capital of petitioner.

Neither the income of the petitioner, nor its right to deduct payments made out of the fund, is in dispute. The question is whether the petitioner is entitled to deduct all sums paid into this reserve fund, without regard to the amount of liabilities, incurred or paid, to its employees. The years involved are 1920, 1921, and 1922.

Deductions from income may not be made unless authorized by the statute. The petitioner claims the right to make this deduction under section 234(a)(1), Revenue Act 1918 (40 Stat. 1057) and the corresponding section in the Revenue Act 1921 (42 Stat. 227, § 234(a)(1). That subsection reads in part:

"(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * * "

The briefs of the parties are devoted largely to the question of whether the fund is held in trust, and, if so, whether it is revocable. These questions need not be determined. While the primary purpose of the fund is to secure employees in their compensation, payments from the fund discharged legal obligations of the employer. And while the employer may not revoke the trust as long as obligations to employees are outstanding, any excess in the fund at the end of 1920 is available to pay legal obligations of the employer incurred or due in 1921. So, at all times, the employer has the benefit of the accruals to the fund, in that such accruals are available to pay its legal obligations. It is argued that the petitioner has the right to treat payments into the fund as expenses, and, in event it later revoked the arrangement, to then charge itself as income with any balance repossessed; that is to say, the petitioner desires to select the taxable year into which this income shall be charged. The same general argument was made, without success, in Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916.

There is another reason. Taxation is a practical matter, and form must give way to substance. In Eisner v. Macomber, 252 U. S. 189, 211, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570, and Bowers v. Kerbaugh-Empire Co., 271 U. S. 170, 46 S. Ct. 449, 451, 70 L. Ed. 886, it was held that, "in determining what constitutes income, substance rather than form is to be given controlling weight." The same rule should apply to "expenses"; and in truth and substance the sums set aside by the petitioner were not "expenses" of the business. They were sums "set aside" as required by the commission, and were in fact reserves against contingent losses. The order of the commission twice speaks of them as such; the petitioner carried the fund on its books as an asset, offsetting it by "a corresponding amount reflected as a reserve for Workmen's Compensation Insurance." True, it was more than a bookkeeping entry; it was an actual reserve, akin to that required of insurance companies, but nevertheless a

reserve. It is significant that the reserves of insurance companies are deductible by virtue of a separate subsection which does not extend to mining companies. "Reserves to cover contingent liabilities * * * are not allowable as deductions." Lucas v. American Code Co., 280 U. S. 445, 50 S. Ct. 202, 204, 74 L. Ed. 538; United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347.

The precise question came before the Board of Tax Appeals in May, 1925. Appeal of Pan-American Hide Co., 1 B. T. A. 1249. The board held that such payments were not deductible as an expense, saying:

"The taxpayer also urges that it is improper to discriminate between one who pays premiums to an insurer and one who bears his own risk. The difference is one of fact; in the one case the expense of premiums is paid or incurred and in the other it is not. The discrimination, if such it be, is self-imposed. Since the statute does not permit a taxpayer to deduct as an expense an amount which he fears he may some day be called upon to spend, there can be no sanction for such a deduction."

To the same effect, see Appeal of Thompson Scenic Ry. Co., 2 B. T. A. 664; Id., 9 B. T. A. 1203; Appeal of Greenville Coal Co., 3 B. T. A. 1323. It thus appears that at least since May, 1925, the Commissioner and the Board have uniformly held that a self-insurer may not deduct an amount equivalent to premiums it might have, but did not, expend. Congress has re-enacted section 234 since, without change in this regard, thereby recognizing and adopting the established practice. Luckenbach S. S. Co. v. United States, 280 U. S. 173, 50 S. Ct. 148, 74 L. Ed. 356; United States v. Jackson, 230 U. S. 183, 50 S. Ct. 143, 74 L. Ed. 361; National Lead Co. v. United States, 252 U. S. 140, 40 S. Ct. 237, 64 L. Ed. 498; United States v. Anderson, 269 U. S. 422, 439, 46 S. Ct. 131, 70 L. Ed. 347. Petitioner cites later decisions of the Board of Tax Appeals which it contends are inconsistent with the decisions above set out. Without reviewing them or expressing an opinion thereon, we need only say that the present case is not analogous to a trust set up by an employer to assist employees in sickness or old age, where he is under no obligation so to do; neither is it governed by Portland Cremation Association v. Commissioner (9 C. C. A.) 31 F.(2d) 843, where a cemetery corporation, in consideration of the purchase of a lot, agreed to pay a portion of the price into a perpetual maintenance fund.

The whole object of self-insurance is to avoid the expense of insurance premiums. If the petitioner had elected to insure its risks in the state fund or a private company, it would have expended the premium and shifted the risk; instead, it retained the risk and kept the premium. Having elected not to expend the premium, it cannot charge a corresponding sum as an "expense." The "expenses" incurred and deductible were the sums paid its injured workmen, and not the amounts set aside for their protection; the petitioner is not entitled to deduct as an expense a sum of money which it might have expended for insurance premiums, but did not.

The petition to review is denied.