## WAYNE TITLE & TRUST CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 10541.

United States Court of Appeals
Third Circuit.

Argued Jan. 10, 1952.

Filed March 17, 1952.

Charles S. Jacobs, Philadelphia, Pa. (William R. Spofford, Robert R. Batt, Philadelphia, Pa., Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., on the brief), for petitioner.

Harry Marselli, Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Special Assts. to the Atty. Gen., on the brief), for respondent.

Before GOODRICH and HASTIE, Circuit Judges, and BURNS, District Judge.

HASTIE, Circuit Judge.

In issue here is the status for income tax purposes of a percentage of title insurance premiums received by the taxpayer, an insurer, and set aside by it during the taxable year. in a "reinsurance reserve fund" in compliance with a state statute.

The taxpayer is a Pennsylvania corporation authorized to engage in a general banking, trust and title insurance business. A Pennsylvania statute regarding title insurance provides, among other things, that one engaging in the title insurance business must establish and maintain a reinsurance reserve fund so long as any policies shall be outstanding; that sums not less than stated percentages of all premiums received shall be set aside in this fund until the accumulation shall reach a certain amount; that the custody of the fund shall be retained by the title insuring company; that the fund shall be earmarked and kept separate and apart from other assets of the company; that the fund shall be under the supervision of the Insurance Commissioner; that the income from the fund shall become a part of the general assets of the company and that the principal of the fund "shall be a trust for the protection of the policyholders, and shall be applied only for the benefit of the holders of policies of title insurance." Penn.Stat. Ann., Title 40, §§ 900, 901, 903, 904.

In compliance with this statute, petitioner set aside in its "reinsurance reserve fund". during the taxable year 1946, an amount of money equal to 10% of all title insurance premiums collected during the year. This amount was not included in its gross income for federal income tax purposes. The Commissioner assessed a deficiency which the Tax Court upheld. The matter is before us on petition for review.

■ Preliminarily, it is clear, as was recognized by the Tax Court, that, because insurance constitutes only a small part of taxpayer's business, its gross income is determinable under the general provisions of Section 22(a) of the Internal Revenue Code rather than other special provisions applicable to insurance companies.[1] But in applying Section 22(a) to the facts of this case it is important that the money in question was received in payment for title insurance.

■ Normally, title insurance premiums are regarded as fully earned when received. And this characteristic is not destroyed by the requirement of Pennsylvania law that a portion of such premiums, or an equivalent sum, be set aside and retained in a reinsurance reserve fund. This court so ruled in American Title Co. v. Commissioner, 3 Cir., 1935, 76 F.2d 332, and that ruling is not challenged here. Rather, taxpayer argues that though the premiums paid to it were fully earned by it, the portion in dispute was received in trust for the insured so as not to be income to the insurer. Whether the concept of trust for the benefit of the insured can ever be used to prevent fully earned premiums from being income to the insurer we need not consider. It is enough that in the

1. Insuring titles is insurance business. American Title Co. v. Commissioner, 1933, 29 B.T.A. 479, affirmed 3 Cir., 1935, 76 F.2d 332. In determining the tax liability of a company engaged in several · activities including the insurance of titles, however, whether its gross income is determined by § 204 applicable to insurance corporations or by § 22(a) applicable to non-insurance corporations, 26 U.S.C. §§ 22(a), 204, depends on the activities which are the principal source of income during the taxable year. Bowers v. Lawyers Mortgage Co., 1932, 285 U.S. 182, 52 S.Ct. 350, 76 L.Ed. 690; Empire Title & Guaranty Co. v. U. S., 2 Cir., 1939, 101 F.2d 69. Here the Tax Court found that only 9.4% of petitioner's income during the taxable year was derived from the insurance business.

circumstances of this case the premiums clearly were income.

Since taxpayer's task is to prove that premium payments actually received by it were not received as income it must show that a part of each premium came to it from the insured impressed with a trust. Such, it says, is the effect of the Pennsylvania statute. But that conception requires an unwarranted construction of the statutory scheme. The basic requirement of the statute is that the insuring company shall build a reinsurance reserve up to a required $500,000. This may be done by setting aside sums equal to specified percentages of premiums, or it may be done by setting aside sums out of surplus and undivided profits, or by utilizing reserves accumulated under a precedent statute, or by a combination of these methods. But the build up toward the required $500,000, however achieved, must be fast enough so that the fund will at no time be smaller than a stipulated percentage of premiums received. The required maintenance of a minimum proportional relationship is in itself not enough to make a part of any premium a trust res as it is received. It is much more significant that the insurer was explicitly authorized to use resources other than current premiums to establish and maintain the required fund. The flexible scheme for the accumulation of a reinsurance reserve must be considered whole, and so viewed cannot be described as imposing a trust upon premiums as received.

As a separate point, it is noteworthy that under the Pennsylvania statute, the income of the reinsurance reserve fund becomes the sole property of the taxpayer and can be used or disposed of as the taxpayer may see fit. In this very case the fund was invested in bonds. The resulting income was the unrestricted property of taxpayer. This is a significant distinction between the present situation and those cemetery association cases relied upon by taxpayer in which certain types of perpetual care funds have been regarded as trust funds excludible from cemetery association income. Commissioner of Internal Revenue v. Cedar Park Cemetery Ass'n, Inc., 7 Cir.,

1950, 183 F.2d 553; American Cemetery Co. v. United States, D.C.D.Kan. 1928, 28 F.2d 918; Troost Avenue Cemetery Co. v. United States, D.C.D.Mo. 1927, 21 F.2d 194.

The Tax Court was correct in its conclusion that the entire amount of title insurance premiums received by taxpayer constituted income.

But even so, taxpayer says in its alternative argument, the transfer of the sum here in question from its unrestricted funds to the statutory reinsurance reserve fund amounted to a business expense deductible from gross income. We think, however, that in setting money aside in its reinsurance reserve fund taxpayer did not pay or incur expense within the meaning of the provision of Section 23 of the Internal Revenue Code, 26 U.S.C. § 23, which permits the deduction from gross income of ordinary business expenses incurred within the taxable year.

No payment was made to a third person as when a risk is reinsured. No fixed obligation to policyholders was involved. The insurer merely segregated and kept in its own custody, as a required safeguard against contingent liability, a portion of the premiums collected. It is well settled that analogous voluntary segregation of reserves is not expense. Parkview Memorial Ass'n v. Commissioner, 1936, 34 B.T.A. 406; Springdale Cemetery Ass'n, 1925, 3 B.T.A. 223; Appeal of Pan-American Hide Co., 1925, 1 B.T.A. 1249. And the fact that this precaution is mandatory rather than voluntary does not make it any more the incurrence of expense. Spring Canyon Coal Co. v. Commissioner, 10 Cir. 1930, 43 F.2d 78, 76 A.L.R. 1063, certiorari denied Spring Canyon Coal Co. v. Burnet, 284 U.S. 654, 52 S.Ct. 33, 76 L.Ed. 555. This failure to meet the concept of expense is very clear in the title insurance field because the protected obligation is so patently contingent. Unlike life insurance which insures against death liabilities certain to arise but uncertain only as to time, title insurance insures against defects which may or may not, at some future date, be found to have existed in real property titles at the time the policy was issued. Any liability which the title insurance company may have on its policies

is, therefore, contingent and any reserve it may set up in the nature of self-insurance to meet this liability must be contingent rather than fixed. The attempted deduction of such a reserve, whether maintained voluntarily or in compliance with law, from gross income must be disallowed since it reflects no expenses paid or incurred.

The decision of the Tax Court will be affirmed.