CONSUMERS OIL CORPORATION OF TRENTON, NEW JERSEY, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 231–59.

United States District Court
D. New Jersey.

Nov. 23, 1960.

Morris J. Oppenheim, Asbury Park, N. J., for plaintiff.

Charles K. Rice, Asst. Atty. Gen., Dept. of Justice, Lyle M. Turner, Jerome Fink, George T. Rita, Dept. of Justice, Washington, D. C., Chester A. Weidenburner, U. S. Atty., Newark, N. J., for defendant.

WILLIAM F. SMITH, Chief Judge.

This is an action to recover internal revenue taxes, to wit, the income taxes for the calendar years 1955 and 1956, alleged to have been erroneously assessed and collected. The jurisdiction of the Court is invoked under Section 1346 (a) (1) of Title 28 U.S.C.A., as amended. The action is before the Court on a stipulation of facts.

### Facts

#### I

The plaintiff, a corporation organized under the laws of the State of New Jersey, has been engaged in the sale and distribution of oil and gasoline products. Its plant, which includes land, buildings, storage tanks, etc., is located on a bank of the Delaware River at Trenton, New Jersey, at a point on the river downstream of the point where tidal influence comes to an end. The area is admittedly vulnerable to flood damage; in fact, the record flood of 1955 caused damage to the plaintiff's plant.

#### II

The plant is owned by the Delaware Petroleum Company, a corporation of the State of New Jersey, and has been under lease to the plaintiff on a monthly basis terminable on thirty days' notice. (The original lease, executed on November 1, 1952, was for one year.) The officers, directors and controlling stockholders of both corporations are the same.

#### III

The plaintiff, as lessee of the plant, agreed to "make all necessary and reasonable repairs and maintain the demised premises in reasonably good condition." The plaintiff further agreed to surrender the plant at the expiration of the lease "in as good state and condition as reasonable use and wear thereof will permit, *damages by the elements* excepted." (Emphasis by the Court.)

#### IV

The plaintiff, by a written agreement with three of its officers and directors, established a "trust fund" which was to be administered by the latter and held by them as insurance against possible liability for property damage resulting from flood. The trust agreement was subject to automatic termination upon cessation of the plaintiff's business, and was unilaterally revocable by the plaintiff upon determination that continuance of the trust was no longer feasible "as a matter of business expediency and sound business operation." (Paragraphs 10 and 11 of the Agreement.) The balance in the fund was repayable to the plaintiff upon termination or revocation of the agreement. The agreement was executed on December 16, 1955, and was in effect during the years here in question.

#### V

The plaintiff paid into the fund $15,-559.58 during the taxable year of 1955, and $17,817.84 during the taxable year of 1956; these sums were "equal to one-sixteenth of a cent per gallon on all liquid fuels * * * sold * * * during the" said years. (Paragraph 1 of the Agreement.) These payments were treated as "ordinary and necessary expenses paid or incurred during the taxable year[s]" and were claimed as allowable deductions under Section 162(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. The plaintiff suffered no flood damage after the establishment of the fund and no part of it was actually expended.

## VI

The claimed deductions were disallowed upon audit of the returns by the Internal Revenue Service and the tax liability of the plaintiff for each of the years in question was accordingly adjusted. There was assessed against the plaintiff an additional income tax of $7,744.34 for the taxable year 1955 and an additional income tax of $9,648.58 for the taxable year 1956, together with interest thereon as reflected in the Stipulation. The assessments were paid and thereafter claims for refunds were filed and denied. The present action followed.

### Discussion

The payments made by the plaintiff to the trustees pursuant to the terms of the trust agreement did not meet the concept of "ordinary and necessary expenses paid or incurred during the taxable year[s]." The fund thus created remained wholly within the control of the plaintiff and the balance remaining therein was subject to repayment upon either the cessation of its business or the unilateral revocation of the agreement. The payments entailed nothing more than a voluntary segregation of funds out of income as a reserve against a contingent liability and were, therefore, not allowable deductions. Lucas v. American Code Co., 280 U.S. 445, 452, 50 S.Ct. 202, 74 L.Ed. 538; Appeal of William J. Ostheimer, 1 B.T.A. 18; Appeal of Pan-American Hide Co., 1 B.T.A. 1249, and the cases hereinafter cited. The mere fact that the transaction was cast in the form of a trust cannot avail the plaintiff.

The parties have agreed that because of the nature of the risk "regular insurance companies" would not underwrite the contingent liability. It is on this fact that the plaintiff endeavors to distinguish the present case from the cases hereinabove cited. The plaintiff argues that the payments were "tantamount to the payments of insurance premiums and, * * *, constitute[d] ordinary and necessary business expenses" within the meaning of the Code, supra. A similar argument was properly rejected by the Board of Tax Appeals in the Appeal of L. A. Thompson Scenic Railway, 2 B.T.A. 664. Accord. Wayne Title & Trust Co. v. Commissioner of Internal Revenue, 3 Cir., 195 F.2d 401; Spring Canyon Coal Co. v. Commissioner of Internal Revenue, 10 Cir., 43 F.2d 78, 76 A.L.R. 1063; Wolfington Body Co. v. Smith, D.C., 99 F. Supp. 788. The distinction which the plaintiff here endeavors to draw is not tenable.

### Conclusion

The complaint will be dismissed for the reasons hereinabove discussed and judgment will be entered accordingly.