CARNATION COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5793–76.    Filed December 26, 1978.

*J. Patrick Whaley* and *David W. Richmond,* for the petitioner. *Alan S. Beinhorn,* for the respondent.

## OPINION

GOFFE, *Judge:* The Commissioner determined a deficiency in the Federal income tax of petitioner for the taxable year 1972 in the amount of $823,632. This matter is before the Court on the parties' motions for summary judgment which were filed

pursuant to Rule 121, Tax Court Rules of Practice and Procedure. Due to concessions, three issues remain for our decision:

(1) Whether petitioner is entitled to deduct as an ordinary and necessary business expense the entire amount paid to an unrelated insurance company as insurance premiums if such unrelated company thereafter reinsures 90 percent of the risk that it assumed under petitioner's policy with petitioner's wholly owned Bermudan subsidiary;

(2) Whether the amounts so received by petitioner's subsidiary, which is a controlled foreign corporation, constitute income derived from the insurance or reinsurance of United States risks under section 953, I.R.C. 1954,[1] or constitute contributions to capital under section 118; and

(3) Whether the amounts so received by that subsidiary are attributable to petitioner as subpart F income and are considered income from sources without the United States for purposes of computing petitioner's foreign tax credit limitation under section 904.

For the purpose of these motions, all of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated by this reference.

Carnation Co. (hereinafter Carnation or petitioner) filed its Federal income tax return for the taxable year 1972 with the Office of the Internal Revenue Service, Fresno, Calif. For 1972, Carnation and its subsidiary corporations which were required to file Federal income tax returns each filed separate Federal income tax returns rather than a consolidated return.[2] Carnation, a Delaware corporation, had its principal office in Los Angeles, Calif., during 1972.

Petitioner processes and sells food and other grocery products both within and without the United States. As part of its overall operation, Carnation manufactures cans in sufficient quantity to supply substantially all of its own needs as well as the needs of certain other canners. As a function of these operations, petitioner owns more than 125 plants and other facilities which are located in the United States and Canada. Such facilities are subject to the usual risks of loss ordinarily covered by insurance,

---

[1] All section references are to the Internal Revenue Code of 1954, as amended.

[2] Petitioner and its subsidiaries have filed separate Federal income tax returns at least since 1954.

and many of such facilities are situated in locales subject to earthquakes.

Carnation maintains an insurance department which is staffed by its own employees. This department recommends to Carnation's management the type and amount of insurance coverage needed and its likely cost. The insurance department's recommendations are made after consultation with Fred S. James & Co., an insurance brokerage firm employed by petitioner to place Carnation's insurance coverage with carriers. For many years, part of Carnation's insurance was placed with American International Group, Inc. (hereinafter AIG).

On August 20, 1971, the board of directors of Carnation resolved to organize an insurance company in Bermuda to carry on the business of insurance and reinsurance of various multiple line risks including those of petitioner and its subsidiaries. On August 26, 1971, Carnation caused Three Flowers Assurance Co., Ltd. (hereinafter Three Flowers), to be incorporated as petitioner's wholly owned Bermudan subsidiary. Three Flowers is a controlled foreign corporation within the meaning of section 957. Under an agreement dated September 1, 1971, Carnation's initial contribution to the capital of Three Flowers was the purchase of 120,000 shares of common stock at its par value of $1 per share. By the same agreement dated September 1, 1971, petitioner and Three Flowers agreed that, on demand of either of them, petitioner would purchase up to 288,000 additional shares of Three Flowers' common stock at $10 per share. Three Flowers therefore had access upon demand to $3 million in capital contributions from its parent.

Carnation purchased a blanket insurance policy from American Home Assurance Co. (hereinafter American Home), which is a member company of AIG, providing for 3 years of insurance coverage commencing September 22, 1971. Such policy provided coverage of up to $500,000 per loss arising out of any one event at any one location with a $10,000 per loss deductible. Covered events included fire, lightning, vandalism, malicious mischief, sprinkler leakage, flood, and earthquake shock. Except for a small portion which covered Canadian risks, the entire coverage pertained to property located within the United States.

Also effective September 22, 1971, American International Underwriters Overseas, Ltd., of Hamilton, Bermuda (hereinafter Overseas), agreed to be Three Flowers' managing agent in

Bermuda. Overseas specializes in the management of Bermudan insurance companies and is a member company of AIG.

Also on September 22, 1971, Three Flowers contracted to reinsure 90 percent of American Home's liability under Carnation's policy. Article I of that agreement provided as follows:

1. The Company agrees to cede and the Reinsurer agrees to accept a 90% quota share part of all such insurances issued by the Company. Such insurance shall exclude the following:

a. As respects vessels:

Losses, Damage, or Expenses caused by or resulting from capture, seizure, arrest, restraint or detainment, or the consequences thereof or of any attempt thereat, or any taking of the vessel by requisition or otherwise, whether in time of peace or war and whether lawful or otherwise; also losses, damages or expenses from all consequences of hostilities or war-like operations (whether there be a declaration of war or not), but the foregoing shall not exclude collision or contact with aircraft, rockets or similar missiles, or with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather, fire or explosion unless caused directly (and independently of the nature of the voyage or service which the vessel concerned, or, in the case of a collision any other vessel involved therein, if performing) by a hostile act by or against a belligerent power, and for the purpose of the exclusion, "power" includes any authority maintaining naval, military or air forces in association with a power; also excluded, whether in time of peace or war, all losses, damage or expenses caused by any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter; also losses, damage or expenses from the consequence of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or piracy.

b. As respects other property:

Losses, damage or expenses from any consequence whether direct or indirect, of war, invasion, act of foreign enemy, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection or military or usurped power.

2. The premium due the Reinsurer shall be its proportionate share of the net premiums (i.e., gross premium less cancellations and returns) less the commission specified in ARTICLE II (4).

American Home ceded to Three Flowers 90 percent of the premium received from Carnation. Three Flowers paid American Home a 5-percent commission based on net premiums ceded and reimbursed American Home for premium taxes. As a result of this reinsurance contract, American Home was liable to Carnation under the insurance policy described above and was required to pay claims made by Carnation under that policy; Three Flowers was required to reimburse American Home under the terms of their reinsurance contract.

Prior to the consummation of the reinsurance agreement

between American Home and Three Flowers, American Home had expressed its concern to petitioner about the financial ability of Three Flowers to cover losses pursuant to the contemplated reinsurance agreement. American Home requested that petitioner deliver its letter of credit or other guarantee to American Home. Petitioner refused to do so. However, petitioner did represent that it would provide for the capitalization of Three Flowers up to $3 million. Therefore, petitioner and Three Flowers entered into the agreement dated September 1, 1971, and described above. There were no other agreements, written or oral, between Carnation and American Home or Carnation and Three Flowers with respect to the risks covered under petitioner's policy.

In November 1972, Carnation paid American Home $1,950,000 as the 1972 annual premium. In December 1972, American Home paid Three Flowers $1,755,000 pursuant to their reinsurance contract for 1972. The amounts so paid were the product of arm's-length negotiation.

For the taxable year 1972, petitioner deducted as an ordinary and necessary business expense the entire $1,950,000 premium paid to American Home. Petitioner, acknowledging that Three Flowers was a controlled foreign corporation for 1972, reported $1,647,216 of income earned by Three Flowers but attributable to Carnation by reason of subpart F. In computing its section 904 foreign tax credit limitation, Carnation included the $1,647,216 of subpart F income as income from sources without the United States.

Respondent determined that $1,755,000 of insurance premiums paid by Carnation to American Home, which equals the amount of premiums ceded by American Home to Three Flowers under their reinsurance agreement, was not deductible by Carnation as ordinary and necessary business expenses. Instead, respondent characterized the $1,755,000 payment as a contribution by Carnation to the capital of its subsidiary, Three Flowers. As a result of that recharacterization, respondent further determined that income of Three Flowers attributable to petitioner by reason of subpart F had been overreported. Respondent determined that the proper amount of such income was $50,616 rather than the reported amount of $1,647,216. As a result of the disallowed deductions and the decrease in subpart F income, respondent also redetermined petitioner's foreign tax

credit. Specifically, in determining the section 904 foreign tax credit limitation, the amount of petitioner's taxable income from sources without the United States was reduced and the amount of petitioner's entire taxable income was increased, aggregately causing the section 904 limitation to be reduced and ultimately causing petitioner's foreign tax credit to be reduced in the amount of $781,793.[3]

While the organization of respondent's brief makes no clear distinction among them, four separate theories are advanced to support respondent's determination that petitioner is not entitled to deduct as an ordinary and necessary business expense the entire amount paid to American Home. First, citing *Helvering v. LeGierse*, 312 U.S. 531 (1941), and *Commissioner v. Treganowan*, 183 F.2d 288 (2d Cir. 1950), respondent argues that risk-shifting is an ingredient necessary to insurance; that to the extent petitioner's risk was "reinsured" with its own subsidiary, its risk was not shifted; and therefore, that 90 percent of petitioner's payment to American Home, which amount ultimately was received by petitioner's subsidiary, was not paid to American Home as a deductible insurance premium. Second, citing *Spring Canyon Coal Co. v. Commissioner*, 43 F.2d 78 (10th Cir. 1930), cert. denied 284 U.S. 654 (1931), and *Pan-American Hide Co. v. Commissioner*, 1 B.T.A. 1249 (1925), respondent contends that no deduction is allowed for amounts set aside as self-insurance; that to the extent petitioner's risk was "reinsured" with its own subsidiary petitioner was engaged in an indirect form of self-insurance; and therefore that 90 percent of petitioner's payment to American Home, which amount ultimately was received by petitioner's subsidiary, was an amount set aside for self-insurance and nondeductible. Third, respondent argues that 90 percent of petitioner's payment to American Home, which amount ultimately was received by petitioner's subsidiary, was not "paid or incurred" by petitioner within the meaning of section 162 because that amount remained within petitioner's economic family and under its practical control. Fourth, respondent contends that the grant of a deduction in respect of any expenditure is predicated on value being received in exchange for such expenditure; that nothing of value was

---

[3]Respondent also increased Carnation's 1972 income by $1,158,852 by reason of certain adjustments conceded by petitioner and not in issue here.

received by petitioner in exchange for 90 percent of its payment to American Home because ultimately petitioner bore the risk of loss on all reinsurance of petitioner's risk with its subsidiary; and therefore that 90 percent of petitioner's payment to American Home was not a deductible insurance premium.

Concerning the determination that petitioner's subpart F income should be reduced for 1972, respondent argues that since 90 percent of petitioner's payments to American Home are not premiums paid for insurance, the amount received by Three Flowers is not income derived from reinsuring United States risks and therefore is not income attributable to Carnation by reason of subpart F. Respondent contends that it necessarily follows that the amount received by Three Flowers from American Home constitutes an indirect capital contribution by Carnation to Three Flowers pursuant to section 118.

Concerning the decrease in petitioner's foreign tax credit determined for 1972, respondent contends that the decrease is mandated by a reduction in the section 904 foreign tax credit limitation, which reduction results from denying the deduction by petitioner of 90 percent of its payment to American Home and from recharacterizing American Home's payment to Three Flowers as a contribution by Carnation to Three Flowers' capital pursuant to section 118.

Petitioner's first argument responds to the determination that only 10 percent of the amount petitioner paid to American Home is deductible as an ordinary and necessary business expense. Carnation points out that payments of the kind made by it to American Home usually are deductible as ordinary and necessary business expenses paid for the procurement of insurance. Petitioner correctly concludes that its relationship to Three Flowers and the reinsurance agreement between Three Flowers and American Home are the reasons behind respondent's determination. Petitioner then reasons that respondent's determination is necessarily premised on a conclusion that Carnation and Three Flowers are not separate entities and are considered as one for tax purposes. Relying on the absence here of a consolidated income tax return and authorities such as *Moline Properties v. Commissioner*, 319 U.S. 436 (1943), petitioner argues that Carnation and Three Flowers are separate entities for tax purposes. Petitioner concludes therefore that the premise for respondent's determination is destroyed and that Carnation

is entitled to deduct as an ordinary and necessary business expense the entire amount it paid to American Home.

We agree with petitioner that some of the language in respondent's brief suggests that Carnation and Three Flowers are not separate entities. Deciding whether related corporations are separate entities for tax purposes is a factual determination. *Bass v. Commissioner*, 50 T.C. 595, 602 (1968). See *Moline Properties v. Commissioner, supra* at 439. If a material fact is in issue here, the parties' motions for summary judgment must be denied. Rule 121(b), Tax Court Rules of Practice and Procedure. Respondent's brief sets forth four theories to support his determination that it was inappropriate for petitioner to deduct the entire amount it paid to American Home. These four theories, although commingled somewhat, merit separate consideration. We must decide whether all of respondent's theories are premised on a finding that Carnation and Three Flowers are not separate entities for tax purposes. In that light, we will analyze respondent's argument that *Helvering v. LeGierse, supra* (hereinafter *LeGierse*), controls the instant case.

In *LeGierse*, an elderly woman entered into two contracts with an unrelated insurance company. The first was a single premium life insurance policy naming her daughter as beneficiary. The second was a single premium lifetime annuity. The insurance company agreed to issue the insurance policy only on the condition that the elderly woman simultaneously would purchase the annuity.

Less than a month after the execution of the two contracts, the elderly woman died. Under section 302(g) of the applicable statute, the Revenue Act of 1926, "the excess over $40,000 of the amount receivable by [beneficiaries other than the executor] as insurance under policies taken out by the decedent on his own life" was includable in the decedent's gross estate. The amount receivable by the decedent's daughter was $25,000. Before the Supreme Court, the issue was whether the proceeds were includable in the decedent's gross estate. As a preliminary issue, the Court decided whether the proceeds received by the decedent's daughter were "receivable * * * as insurance" and hence excludable from the decedent's gross estate under section 302(g). The Court analyzed the language and the apparent purpose of the statute and determined that the word "insur-

ance" was used in section 302(g) in its commonly accepted sense. The Court observed that—

Historically and commonly insurance involves risk-shifting and risk-distributing. * * * That these elements of risk-shifting and risk-distributing are essential to a life insurance contract is agreed by courts and commentators. * * * Accordingly, it is logical to assume that when Congress used the words "receivable as insurance" in section 302(g), it contemplated amounts received pursuant to a transaction possessing these features. * * * [312 U.S. 531, 539–540.]

The Court decided that the annuity and "life insurance" contracts were not distinct transactions and should be considered together in deciding whether an insurance risk existed. The Court reasoned that "annuity and insurance are opposites; in this combination the one neutralizes the risk customarily inherent in the other. From the company's viewpoint, insurance looks to longevity, annuity to transiency." 312 U.S. at 541. The Court concluded that the contracts exhibited no insurance risk and that the sum payable to decedent's daughter was not excludable under section 302(g) as an amount receivable as insurance.

The foregoing analysis of *LeGierse* reveals that the Court considered together two related agreements between unrelated parties. The Court's opinion is not premised on its disregarding the separateness of the parties to the agreements. We conclude that the application of *LeGierse* to the facts of the instant case will be equally valid whether or not Three Flowers and Carnation are separate entities for tax purposes. Therefore, petitioner's first argument fails to blunt respondent's argument that *LeGierse* controls the instant case. The next query is whether the application of *LeGierse* to the facts of the instant case supports respondent's conclusion that the agreements between Carnation and American Home and between American Home and Three Flowers were not insurance contracts for tax purposes. We have decided that *LeGierse* supports respondent's conclusion for the reasons set forth below.

The issue presented by the application of *LeGierse* to this case is whether an insurance relationship existed in 1972 between Carnation and American Home and between American Home and Three Flowers. The stipulation of facts here shows that the capitalization agreement between Carnation and Three Flowers, the insurance agreement between Carnation and American

Home, and the reinsurance agreement between American Home and Three Flowers were not independently conceived or consummated. As a focal point, American Home refused to enter into a reinsurance agreement with Three Flowers unless Carnation agreed to provide for capitalization of Three Flowers in the amount of $3 million. As in *LeGierse*, the interdependence of the agreements is clear; following the approach taken by the Supreme Court in *LeGierse*, we must consider the agreements together.

By entering into the agreements in issue, Carnation attempted to shift its risk of property loss due to fire, lightning, vandalism, malicious mischief, sprinkler leakage, flood, and earthquake shock. The agreements attempted ultimately to shift 90 percent of the risk to Three Flowers and 10 percent of the risk to American Home. In the event of a covered casualty, the loss suffered by Carnation ultimately would be borne 90 percent by Three Flowers and 10 percent by American Home. The agreement to purchase additional shares of Three Flowers by Carnation bound Carnation to an investment risk that was directly tied to the loss payment fortunes of Three Flowers, which in turn were wholly contingent upon the amount of property loss suffered by Carnation. The agreement by Three Flowers to "reinsure" Carnation's risks and the agreement by Carnation to capitalize Three Flowers up to $3 million on demand counteracted each other. Taken together, these two agreements are void of insurance risk. As was stated by the Court in *LeGierse*, "in this combination the one neutralizes the risk customarily inherent in the other." 312 U.S. at 541.

In *LeGierse*, the Court decided that no insurance risk existed and that a payment made by reason of the "insured's" death was not an amount receivable as insurance. In the instant case, we have decided that, to the extent American Home "reinsured" its risk with Three Flowers, no insurance risk exists. We hold that, considered together, the "reinsurance" agreement between American Home and Three Flowers is not insurance and the "insurance" agreement between Carnation and American Home is insurance only to the extent that American Home's risk under the policy was not "reinsured" with Three Flowers; 10 percent of the amount paid by Carnation in consideration for its agreement

with American Home is deductible as an ordinary and necessary business expense for insurance premiums.[4]

Petitioner attempts to avoid the application of *LeGierse* to the instant case by factual distinctions. Deciding whether an agreement is insurance under Federal statutes by reference to a risk-shifting test is not unique to tax controversies. See, e.g., *S.E.C. v. Variable Annuity Life Insurance Co.*, 359 U.S. 65 (1959). Under the Internal Revenue Code, the risk-shifting test has been applied when deciding whether agreements are insurance not only for purposes of the estate tax, as in *LeGierse*, but also for purposes of the income tax. See, e.g., *Haynes v. United States*, 353 U.S. 81, 85 (1957) (amounts received as sickness benefits); *Allied Fidelity Corp. v. Commissioner*, 572 F.2d 1190 (7th Cir. 1978), affg. 66 T.C. 1068 (1976) (fidelity and surety bond writing); *Tighe v. Commissioner*, 33 T.C. 557, 564 (1959) (proceeds from reciprocal partnership death benefit agreement). Thus, we are unmoved by petitioner's bald contention that the test used in *LeGierse* should not apply because it did not involve the writing of insurance by one corporation for another on the subsequent reinsurance of a portion thereof with a third corporation. The opinion of the Supreme Court in *LeGierse* controls the instant case.

Petitioner next contends that the "risk-shifting" and "self-insurance" arguments advanced here by respondent were rejected by this Court in *Theodore v. Commissioner*, 38 T.C. 1011 (1962), appeal dismissed by agreement of the parties (6th Cir. 1963), 1964 P-H par. 56,324 (hereinafter *Theodore*). In *Theodore*, a taxpayer was a shareholder of two corporations. One was a taxicab company, the other an insurance company. The taxicab company insured its taxicabs with the insurance company. One issue in the case was whether the insurance company was a mutual insurance company. Another issue was whether under

---

[4]Respondent determined that only 10 percent of the amount paid by Carnation in consideration for its agreement with American Home is deductible as an ordinary and necessary business expense for insurance premiums. Under the "reinsurance" agreement set forth in part above, Three Flowers agreed to assume 90 percent of the risk under American Home policies with Carnation exclusive of risks set forth in subpars. (a) and (b) of art. I, par. (1). Since certain risks were excluded from the 90-percent assumption, more than 10 percent of the risk likely was retained by American Home. However, since petitioner offered no argument to that effect nor provided proof regarding the true percentage of risk retained by American Home, we sustain respondent's determination that American Home retained a 10-percent risk, Carnation's risk of loss was shifted to that extent, and only 10 percent of Carnation's "premium" to American Home is deductible as an ordinary and necessary business expense. The burden of proof was on petitioner. *Welch v. Helvering*, 290 U.S. 111 (1933).

section 482 the premiums paid by the taxicab company to the insurance company were excessive. With respect to this second issue, respondent had disallowed a portion of the taxicab company's claimed deduction for insurance premiums as being excessive and correspondingly had decreased the income of the insurance company. As an alternative to his section 482 reallocation argument, respondent supported his determinations concerning the excessive portion under authority of *LeGierse* because there was no risk-shifting and under authority of *Spring Canyon Coal Co. v. Commissioner*, 43 F.2d 78 (10th Cir. 1930), cert. denied 284 U.S. 654 (1931), because the arrangement constituted a form of self-insurance.

We held that the insurance company was a mutual insurance company. We found that the amount paid by the taxicab company for insurance premiums was not excessive. We therefore allowed the taxicab company its deduction in full and charged the mutual insurance company with a corresponding amount of income. We did not mention respondent's "risk-shifting" and "self-insurance" arguments in our opinion, nor did we cite *Helvering v. LeGierse* or *Spring Canyon Coal Co. v. Commissioner, supra.*

Carnation argues that our decision in *Theodore* could not have been reached unless we rejected respondent's alternative arguments, which were the same risk-shifting and self-insurance arguments as those presented herein by respondent. Carnation is correct, but such rejection did not indicate that respondent's arguments themselves were without merit. The risk-shifting and self-insurance arguments presented in *Theodore* were at variance with the pleadings in that case and inconsistent with respondent's determination there. Focusing on the application of *LeGierse* in *Theodore,* it is apparent that if we had decided that *LeGierse* controlled the outcome of that case, then we would have recharacterized the insurance agreements between the insurance company and the taxicab company. Had we recharacterized the agreements as being other than insurance agreements, none of the amounts paid to the insurance company by the taxicab company would have been deductible as ordinary and necessary business expenses. Respondent did not argue that *LeGierse* required a complete disallowance of the premium deduction. Respondent did not try to recharacterize the company insuring the taxicabs as anything other than an insurance

company. Respondent sought to disallow only that portion of the deduction that seemed excessive. Accordingly, respondent did not plead an increased deficiency under his alternative argument. That *LeGierse* would apply to the facts in *Theodore* and yet a portion of the deduction would be allowable as an amount paid for insurance is totally inconsistent. As presented in *Theodore*, the argument premised on *LeGierse* was blatantly inconsistent with respondent's overall position in the case, was defectively structured even as an alternative argument, and did not merit consideration or discussion. Similar defects do not exist here, and we have given respondent's arguments under *LeGierse* full consideration.

Petitioner further argues that, when related but separate corporate entities exist, respondent has at his disposal section 482 to ensure that transactions between such related entities reflect economic reality. A multitude of theories, including section 482, were available to respondent to attack the transactions in issue here. It is our task to evaluate the arguments actually presented, not to decide whether alternative theories would have been more appropriate. Therefore, we reject petitioner's assertion that respondent should have proceeded otherwise. While we have rejected petitioner's assertion, we are sympathetic with its frustration over respondent's reluctance to explain the basis of his determination. The notice of deficiency sent to petitioner set forth the deficiency and the computations used to arrive at the deficiency. The Explanation of Adjustments sent to petitioner included the following cryptic paragraphs relative to the issues here:

(a) It is determined that $1,755,000 of "insurance premiums" paid and deducted as a part of "other deductions" on your return is not deductible. Your taxable income is accordingly increased by $1,755,000.

(b) It is determined that the Subpart F income from Three Flowers Assurance, Ltd. to be included in your taxable income is $50,616 rather than the $1,647,216 reported. Your taxable income is accordingly decreased by $1,596,600.

Respondent's answer to Carnation's petition was no more illuminating. While petitioner has neither challenged the validity of the notice of deficiency nor argued prejudice by reason of surprise, we admonish respondent with the following excerpt from *Commissioner v. Transport Mfg. & Equipment Co.*,

478 F.2d 731, 735 (8th Cir. 1973), affg. *Riss v. Commissioner*, 56 T.C. 388 (1971), and *Riss v. Commissioner*, 57 T.C. 469 (1971).[5]

If a violation of a particular Internal Revenue Code section, Treasury regulation, or theory based on sections or regulations is involved, the Commissioner should notify the taxpayer of that section, regulation or theory. The failure to advise the taxpayer of such information is extremely prejudicial. Deficiency assessments are usually presumptively correct, and the taxpayer has the burden to prove them wrong.[6] The taxpayer works at an extreme disadvantage in trying to invalidate deficiency assessments if he does not specifically know why the Commissioner is challenging the taxpayer.[7] If the notice of deficiency does not state the reason for the deficiency, the Commissioner should then inform the taxpayer of the Code sections and theories in his answer. That is precisely the reason for the explicit provisions of Rule 14(b) of the Tax Court, which states:

"(b) *Form of answer.* The answer shall be drawn so that it will advise the petitioner and the Court *fully* of the nature of the defense." (emphasis added.)

Fully advising the taxpayer includes recitation of the Code sections and theories on which the Commissioner relies.[8]

---

[6]Welch v. Helvering, 290 U.S. 111,115, 54 S.Ct. 8, 78 L.Ed. 212 (1933); C.I.R. v. Riss, 374 F.2d at 166.

[7]In Commissioner v. Chelsea Products, 197 F.2d 620, 624 (3d Cir. 1952), the court said that "[t]he Taxpayer can hardly shoulder its burden if it does not know * * * which transactions or group of transactions the Commissioner has determined to have resulted in distortions of true net income."

[8]Of course, if a certain Code section, regulation or theory has not been specifically raised in the notice of deficiency, in the pleadings, or at trial and if there is an absence of surprise on the taxpayer's part, the taxpayer has no reason to complain. Nat Harrison Associates, Inc., 42 T.C. 601, 617 (1964).

Petitioner goes on to argue that the theory under which respondent acts here, when applied to intercorporate dealings other than insurance, produces results inconsistent with settled tax law. We have not yet addressed three of respondent's four theories. The theory that we have analyzed is founded on the Supreme Court's opinion in *Helvering v. LeGierse*, 312 U.S. 531 (1941). The concept central to *LeGierse* is that insurance possesses unique characteristics. *LeGierse* is a test to be applied to intercorporate insurance arrangements. We fail to see that *LeGierse* will have any application to other intercorporate dealings such as intercorporate inventory sales or asset sales, which was suggested by petitioner. In the context of *LeGierse*, petitioner's contention is a non sequitur. We need not test its correctness in the context of respondent's three other theories because it is unnecessary to consider respondent's alternative theories. We turn now to petitioner's final argument.

---

[5]See *Abatti v. Commissioner*, T.C. Memo. 1978–392, 37 T.C.M. 1597, 1600, 1611–1612; 78 P–H Memo T.C. par. 78–392, 1589, 1601.

Section 951 provides for the inclusion of subpart F income in the income of United States shareholders. Section 952 defines subpart F income, one component of which is "the income derived from the insurance of United States risks (as determined under section 953)." Sec. 952(a)(1). Section 953 provides rules for determining that component.[6] Section 1.953–1(a), Income Tax Regs., provides in pertinent part as follows:

(a) *In general.* The subpart F income of a controlled foreign corporation for any taxable year includes its income derived from the insurance of United States risks for such taxable year. * * * *It is immaterial for purposes of this*

---

[6]SEC. 953. INCOME FROM INSURANCE OF UNITED STATES RISKS.

(a) GENERAL RULE.—For purposes of section 952(a)(1), the term "income derived from the insurance of United States risks" means that income which—

    (1) is attributable to the reinsurance or the issuing of any insurance or annuity contract—

        (A) in connection with property in, or liability arising out of activity in, or in connection with the lives or health of residents of, the United States, or

        (B) in connection with risks not included in subparagraph (A) as the result of any arrangement whereby another corporation receives a substantially equal amount of premiums or other consideration in respect to any reinsurance or the issuing of any insurance or annuity contract in connection with property in, or liability arising out of activity in, or in connection with the lives or health of residents of, the United States, and

    (2) would (subject to the modifications provided by paragraphs (1), (2), and (3) of subsection (b)) be taxed under subchapter L of this chapter if such income were the income of a domestic insurance corporation.

This section shall apply only in the case of a controlled foreign corporation which receives, during any taxable year, premiums or other consideration in respect of the reinsurance, and the issuing, of insurance and annuity contracts described in paragraph (1) in excess of 5 percent of the total of premiums and other consideration received during such taxable year in respect of all reinsurance and issuing of insurance and annuity contracts.

(b) SPECIAL RULES.—For purposes of subsection (a)—

    (1) In the application of part I of subchapter L, life insurance company taxable income is the gain from operations as defined in section 809(b).

    (2) A corporation which would, if it were a domestic insurance corporation, be taxable under part II of subchapter L shall apply subsection (a) as if it were taxable under part III of subchapter L.

    (3) The following provisions of subchapter L shall not apply:

        (A) Section 809(d)(4) (operations loss deduction).

        (B) Section 809(d)(5) (certain nonparticipating contracts).

        (C) Section 809(d)(6) (group life, accident, and health insurance).

        (D) Section 809(d)(10) (small business deduction).

        (E) Section 817(b) (gain on property held on December 31, 1958, and certain substituted property acquired after 1958).

        (F) Section 832(c)(5) (certain capital losses).

    (4) The items referred to in—

        (A) Section 809(c)(1) (relating to gross amount of premiums and other considerations),

        (B) Section 809(c)(2) (relating to net decrease in reserves),

        (C) Section 809(d)(2) (relating to net increase on reserves), and

        (D) Section 832(b)(4) (relating to premiums earned on insurance contracts),

shall be taken into account only to the extent they are in respect of any reinsurance or the issuing of any insurance or annuity contract described in subsection (a)(1).

    (5) All items of income, expenses, losses, and deductions (other than those taken into account under paragraph (4)) shall be properly allocated or apportioned under regulations prescribed by the Secretary.

*section whether the person insured or the beneficiary of any insurance, annuity, or reinsurance contract is, as to such corporation, a related person or a United States shareholder. \* \* \* [Emphasis added.]*

Petitioner's final argument is that section 953 and the underscored portion of respondent's regulations contemplate a reinsurance arrangement like the one before us and that they characterize the amounts received by Three Flowers as income from the insurance or reinsurance of United States risks.[7] Petitioner's argument is without merit. It is deficient in that it "places the cart before the horse." *LeGierse* is based on the principle that an agreement may resemble insurance in form yet lack an ingredient essential to insurance. The Supreme Court held that such an agreement may not be characterized as insurance and the proceeds therefrom may not be characterized as proceeds from insurance. Applying *LeGierse* to the facts stipulated by the parties here, we have decided that to the extent petitioner's risk was not shifted, the agreements in issue may not be characterized as insurance. To that extent, sections 952, 953, and the regulations thereunder have no application to the agreements here because the application of such sections is predicated upon the existence of insurance. We hold that the amount received by Three Flowers from American Home as premiums for "reinsurance" is not income derived from the insurance of United States risks within the meaning of sections 952 and 953. Absent any alternative argument by petitioner, we affirm respondent's determination under section 118 that the amount so received by Three Flowers is a contribution to capital. Similarly, we affirm respondent's determination that such amount does not constitute income from sources without the United States for purposes of the section 904 foreign tax credit limitation.

---

[7]Petitioner has also cited Treasury Department draft legislation which antedates the enactment of subpart F and which includes in its version of sec. 953 reference, as in the underscored portion of respondent's regulations, to the insurance or reinsurance of risks of a related person or United States shareholder. Petitioner has cited such draft legislation to buttress its argument that the arrangement before us was contemplated by Congress and must be characterized as insurance. We reject petitioner's contention. First, the language present in respondent's regulation and the cited draft does not appear in sec. 953 as enacted. Second, that language is not even mentioned in the House, Senate, or Conference committee reports. H. Rept. 1447, 87th Cong., 2d Sess. (1962); S. Rept. 1881, 87th Cong., 2d Sess. (1962); Conf. Rept. 2508, 87th Cong., 2d Sess. (1962). Third, even if taken at face value, the language found in the draft legislation and carried over to respondent's regulation does not support petitioner's inferential contention that the application of *Helvering v. LeGierse*, 312 U.S. 531 (1941), to sec. 953 is barred by such language.

Having decided under authority of *LeGierse* that respondent's determination is correct, we do not reach respondent's alternate contentions.

> *An appropriate order and decision will be entered.*