**STEARNS–ROGER CORP., INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 81–C–2046.**

United States District Court, D. Colorado.

Jan. 10, 1984.

Robert E. Benson, Holland & Hart, Denver, Colo., for plaintiff.

Robert N. Miller, U.S. Atty., Denver, Colo., Robert Horwitz, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## AMENDED MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

In November 1974, the plaintiff, Stearns-Roger Corporation (Stearns-Roger), incorporated a captive insurance company, Glendale Insurance Company (Glendale). For the tax years 1974 through 1978, Stearns-Roger deducted, as business expenses for federal income tax purposes, $6,042,515.80 in insurance premiums it paid to Glendale. The Internal Revenue Service (IRS) subsequently audited Stearns-Roger and disallowed the deductions. Plaintiff paid the asserted taxes attributable to the disallowed deductions, then filed this suit seeking refund.

This amended memorandum opinion[1] constitutes my findings of fact and conclusions of law required by Fed.R.Civ.P. 52(a). Jurisdiction is founded on 28 U.S.C. § 1346(a)(1).

## I. GENERAL BACKGROUND.

Stearns-Roger is in the business, worldwide, of designing and manufacturing large mining, petroleum, and power generation plants. These plants and facilities frequently cost between $5,000,000 and $20,000,000, and substantial liability risks accompany their design and construction. The bid specifications through which the jobs are obtained usually require Stearns-Roger to insure both itself and the client against many of these risks. If it were unable to obtain such insurance, the tax-payer could not compete in bidding for many major projects.

The insurance typically required includes coverage for errors and omissions, damage to completed operations, and comprehensive general liability. Since the early 1970's, Stearns-Roger has found it difficult or impossible to obtain from traditional insurance companies the types and huge amounts of coverage needed. For that reason, Stearns-Roger decided to enter the insurance business, partly as a financial opportunity and partly to provide itself a source for insurance required to keep it in business.

Stearns-Roger formed its captive insurance company pursuant to the Colorado Captive Insurance Company Act, Colo.Rev. Stat. Section 10–6–101 *et seq.* (1973). In order to obtain state authorization to incorporate the company, Stearns-Roger first had to prove to the Colorado Insurance Commissioner that adequate alternative insurance sources did not exist. The commissioner so found.

Glendale Insurance Company then was incorporated as a captive insurance company capitalized with $1,000,000. To ensure sufficient protection for third-party insureds, Stearns-Roger executed an indemnification agreement by which it agreed to indemnify Glendale for losses and damages up to $3,000,000.[2] In November 1974, the Commission issued Glendale a certificate of authority to operate as a captive insurance company.

Glendale issued insurance policies covering Stearns-Roger, its fifteen subsidiaries, and its project customers. The policies covered errors and omissions, damage to completed operations, comprehensive general liability, and workmen's compensation. For its 1974–78 tax years, Stearns-Roger

---

**1.** This amended memorandum opinion and order replaces my earlier memorandum opinion and order dated November 8, 1983, which I withdrew for reconsideration on December 12, 1983. Although after reconsideration I have not amended any findings or conclusions contained in that earlier memorandum opinion, I have modified the order to conform to the parties'
stipulated request for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). In so doing, I have denied the plaintiff's motion for a new trial.

**2.** The indemnity agreement was never exercised, and it was terminated in November 1981.

deducted as business expenses for insurance the premiums paid to Glendale.[3] The IRS disallowed these deductions and Stearns-Roger, after paying the deficiencies, commenced this refund action.

Prior to trial, the parties stipulated to the following facts:

(1) Glendale was a bona fide insurance company;

(2) Stearns-Roger would have found it difficult or impossible to obtain the required insurance from unrelated third-party insurors;

(3) Premiums paid by Stearns-Roger to Glendale for "insurance" were reasonable in amounts;

(4) Glendale is not Stearns-Roger's alter ego; the two corporations are different entities; and,

(5) Glendale never made any demands of Stearns-Roger under the indemnity agreement, and that agreement was terminated on November 24, 1981.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW.

The issue is whether the sums Stearns-Roger paid Glendale are deductible "insurance" payments under the 1954 Internal Revenue Code, 26 U.S.C. § 162(a). Deductible business expenses include insurance premiums against fire, storm, theft, accident, and other similar losses. 26 C.F.R. § 1.162–1(a).

I find from the evidence that since the early 1970's it has been difficult or impossible for Stearns-Roger to obtain on the open market from commercial insurance companies, the insurance required for itself, its subsidiaries, and its customers. I further find that Stearns-Roger incorporated Glendale to fill this business need. Glendale was not a sham, but a legitimate insurance subsidiary, which operated as a corporate entity distinct from Stearns-Roger. *Compare Roubik v. Commissioner,*

53 T.C. 365 (1969); *Noonan v. Commissioner,* 52 T.C. 907 (1969).

The IRS held that Stearns-Roger's premium payments were not deductible as "insurance" payments.

The Supreme Court has defined insurance as requiring "risk-shifting and risk-distribution." *Helvering v. Le Gierse,* 312 U.S. 531, 539, 61 S.Ct. 646, 649, 85 L.Ed. 996 (1941). Within that framework the government contends that the premiums paid here were to a self-insurance reserve, and such self-insurance, since it does not shift or distribute risk, cannot be relied upon to establish premium deductibility. The government relies on *Spring Canyon Coal v. Commissioner,* 43 F.2d 78 (10th Cir.1931), *cert. denied,* 284 U.S. 654, 52 S.Ct. 33, 76 L.Ed. 555 (1931).

The government's expert witness, Dr. Irving Plotkin, testified that in economic terms the taxpayer's payments failed to shift or distribute risk. When Stearns-Roger suffered an "insured" loss, Glendale paid Stearns-Roger for the loss. Plotkin reasoned that because Glendale is a wholly-owned Stearns-Roger subsidiary, the premiums and losses paid were simply transfers of funds within the Stearns-Roger "economic family." Plotkin concluded that risk had not been shifted or distributed out of the economic family, and in the absence of this shifting or distributing there could not be insurance.

Stearns-Roger, on the other hand, contends that its payments to Glendale were ordinary and necessary insurance payments within 26 U.S.C. § 162(a). It points out that the regulations, in 26 C.F.R. § 162–1(a), expressly provide that insurance payments are deductible. Stearns-Roger argues that its agreement with Glendale shifted the risk of loss to Glendale and that Glendale, not Stearns-Roger, paid losses. Further, Stearns-Roger posits that its transactions with Glendale were

---

**3.** During this period, Stearns-Roger also purchased insurance from third-party insurors which obtained reinsurance from Glendale and ceded some of the premiums to Glendale. Defendant disallowed the plaintiff's deductions for any premiums ceded to Glendale. Defendant has not disallowed the deductions for premiums paid Glendale but which Glendale ceded to third-party insurors for reinsurance.

conducted, for tax purposes, between two distinct corporate entities.

The initial inquiry is whether Glendale, a wholly-owned[4] Stearns-Roger subsidiary, should be treated as a corporate entity distinct from the plaintiff. As stated above, the parties have stipulated that "the two corporations are different entities...." The Code generally treats separate corporations as distinct tax entities; *i.e.*, their financial transactions are not usually aggregated for federal tax purposes. *National Carbide Corporation v. Commissioner*, 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779 (1949). Further, the Code normally recognizes the income tax consequences of transactions between distinct corporations.

The courts consistently have recognized that "[f]or tax purposes, where the purpose for the creation of a corporation is a business one or the creation is followed by business activity, the corporate entity will not be disregarded." *Skarda v. Commissioner*, 250 F.2d 429, 433–34 (10th Cir. 1957); *see also Moline Properties, Inc. v. Commissioner*, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943). Moreover, case law establishes that a parent corporation and its wholly-owned subsidiary may be separate tax entities. *National Carbide Corporation v. Commissioner*, 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779 (1949); *Coca-Cola Bottling Co. v. United States*, 443 F.2d 1253 (10th Cir.1971); B. Bittker and J. Eustice, *Federal Income Taxation of Corporations and Shareholders*, paragraph 15.08 at 15–47 (4th ed. 1979).

There are, however, specific situations in which the financial transactions of separate but related corporations may be aggregated and treated as the transactions of a single taxpayer for certain purposes. Congress, realizing that corporations might abuse the separate corporate entity doctrine, has enacted specific statutes enabling the IRS to void transactions whose principal purpose is income tax avoidance or evasion. *See e.g.*, 26 U.S.C. §§ 267, 269 and 482. While tax considerations no doubt played some part in choosing the ultimate form in which the transactions here were cast, the government has not demonstrated that Stearns-Roger's principal purpose for forming or doing business with Glendale was tax avoidance or evasion. *Compare Bobsee Corp. v. United States*, 411 F.2d 231, 235 (5th Cir.1969); *House Beautiful Homes, Inc. v. Commissioner*, 405 F.2d 61, 65 (10th Cir.1968). Rather, the principal impelling motive was business necessity. I find and conclude, therefore, that these attribution sections do not apply.

Next the government argues that the plaintiff and Glendale are both in a single "economic family" and thus there can be no "insurance" risk shifting or risk distribution between them. In essence, the defendant asserts that for purposes of determining whether there has been risk shifting, Stearns-Roger and Glendale should be treated as one economic entity even though it has been stipulated that they are two distinct corporate entities. In support of its "economic family" argument, the government relies on *Carnation Company v. Commissioner*, 640 F.2d 1010 (9th Cir. 1981), *cert. denied*, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 381 (1981).

In *Carnation*, the Ninth Circuit dealt with a domestic corporation (Carnation) which had created a wholly-owned Bermuda subsidiary (Three Flowers) to issue and re-issue various multiple line risks, but only for Carnation and its other subsidiary corporations. As in the instant situation, Carnation contributed the insurance company's initial capital. Carnation then bought from American Home Insurance Company, an unrelated company, a blanket insurance policy. But the same day, Three Flowers contracted to re-insure 90% of American Home's risk under its blanket policy covering Carnation. Simultaneously, American Home ceded to Three Flowers 90% of the premium it had received from Carnation.

---

4. Glendale is owned 75% directly by Stearns-Roger and 25% by Stearns-Roger Netherlands Antilles, a wholly-owned subsidiary of Stearns-Roger. Thus, for practical purposes, Glendale is a wholly-owned subsidiary and will be so treated in this opinion.

Thus, in substance, 90% of the premium was paid, albeit indirectly, by Carnation to its Bermuda subsidiary, Three Flowers, and Three Flowers, through re-insurance, took on 90% of the insured risk. The re-insurance contract required American Home to pay Carnation's claims, then seek reimbursement from Three Flowers.

The Internal Revenue Service disallowed deduction as a business expense of 90% of the premium paid by Carnation, treating that amount as a capital contribution from Carnation to its subsidiary, Three Flowers. The 10% portion of the premium kept by American Home was allowed as a business expense deduction for insurance.

Circuit Judge Wright, after noting the familiar requirement of risk shifting and risk distribution, and the usual disallowance of deductions claimed for self-insurance, focused on the necessity to scrutinize the substance of the transaction, not merely the form in which the taxpayer had cast it.

"Petitioner's argument, that the existence of insurance depends on the status of the actions, sidesteps this issue. The separate corporate status of Three Flowers and Carnation has no bearing on whether Carnation shifted the risk to American Home or whether American Home shifted the risk to Three Flowers." 640 F.2d at 1013.

The Ninth Circuit affirmed the Tax Court decision holding that there was no risk-shifting of the 90% of risk not retained by American Home because that 90% was actually carried by the insured's (Carnation's) wholly owned subsidiary. Thus there was no insurance, and no deduction.

In *Carnation*, the Ninth Circuit relied heavily on the reasoning set out in Rev. Rul. 77–316, 1977–2 C.B. 53, a ruling cited by the government in the instant case. That ruling applied the "economic family" rationale to disallow deductions for premiums paid by three hypothetical domestic parent corporations, directly or indirectly, to their wholly-owned foreign "insurance" subsidiaries. The deductions were ruled not allowable on the ground there was no economic shifting or distributing of the risk or loss. It was reasoned:

"In each situation described, the insuring parent corporation and its domestic subsidiaries, and the wholly owned "insurance" subsidiary, though separate corporate entities, represent one economic family with the result that those who bear the ultimate economic burden of loss are the same persons who suffer the loss. To the extent that the risks of loss are not retained in their entirety by ... or reinsured with ... insurance companies that are unrelated to the economic family of insureds, there is no risk-shifting or risk-distributing, and no insurance, the premiums for which are deductible under section 162 of the Code.

Thus, the amounts paid by X, Y, and Z and their domestic subsidiaries, ... are not deductible under section 162 of the Code as 'ordinary and necessary expenses paid or incurred during the taxable year.' Because such amounts remain within the economic family and under the practical control of the respective parent in each situation, there has been no amount 'paid or incurred.' See Rev.Rul. 60–275, and Rev.Rul. 69–512, 1969–2 C.B. 24."

The essence of that ruling is that there can be no deduction where, in actuality, there has been no shifting of risk outside the economic family. For that reason the instant taxpayer can gain no solace by citing cases like *United States v. Weber Paper Company*, 320 F.2d 199 (8th Cir.1963). There the taxpayer *and other unrelated firms* needed flood insurance. Commercial insurance carriers refused to sell the insurance, concluding that for them to undertake the proposed flood risks violated sound business judgment. Out of business necessity, the taxpayer joined with *other* companies which had similar needs and formed a mutual exchange to which all paid premiums for insurance against floods. The court concluded that the payments were deductible as insurance premiums.

In *Weber*, as in the instant case, the element of business necessity negated a conclusion that the "insurance" company was formed primarily for tax avoidance. But that hurdle already has been cleared by Stearns-Roger; its problem is that in contrast with the Weber Paper Company, it did *not* ally itself with others similarly situated so that the risk of any one member's flood loss would be shifted to the "economic families" of the other insured members. In short, *Weber* totally misses the mark of the economic family analysis.

In a life insurance context, the Tax Court recently stated:

> "The essence of insurance is the transfer of risk from an individual or business enterprise to a corporation or cooperative society that is in the business of assuming the risks of *others* for an appropriate consideration called a premium." *MIB, Inc. v. Commissioner*, 80 T.C. 438, 439 (1983) (emphasis added).

Here Glendale Insurance Company is not in the business of insuring "others." Its only business is to insure its parent corporation which wholly owns it and ultimately bears any losses or enjoys any profits it produces. Both profits and losses stay within the Stearns-Roger "economic family." In substance the arrangement shifts no more risk from Stearns-Roger than if it had self insured.

I conclude that since the agreement between Stearns-Roger and Glendale did not shift the risk of losses, it was not an insurance contract for federal tax purposes. The "premium" payments, therefore, were not deductible as insurance business expenses, and the taxpayer is not entitled to the claimed refund.

The parties have submitted a stipulated request that, in the event I should find for the defendant on the plaintiff's claim for refund pursuant to 26 U.S.C. § 162(a), I stay all remaining proceedings and certify my ruling pursuant to 28 U.S.C. § 1292(b). Since my findings and conclusions regarding the issues presented at trial involve a controlling question of law as to which there is substantial ground for difference of opinion, and since an immediate appeal from the order may materially advance the ultimate determination of the litigation, I shall make such a certification pursuant to § 1292(b). The parties may perfect an appeal as provided in § 1292(b), and all proceedings in this court will be stayed pending such appeal.

Accordingly, I conclude that the plaintiff is not entitled to a deduction pursuant to 26 U.S.C. § 162(a), and further certify my rulings contained in this memorandum opinion and order for appeal pursuant to 28 U.S.C. § 1292(b). All proceedings in this court are stayed pending any such appeal.