**STEARNS–ROGER CORPORATION,
Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

No. 84–1773.

United States Court of Appeals,
Tenth Circuit.

Sept. 30, 1985.

Robert E. Benson (John C. Siegesmund, III and Timothy M. Rastello, with him on the brief, Holland & Hart, of counsel), Denver, Colo., for plaintiff-appellant.

Gary R. Allen, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup and Gayle P. Miller, Attys., Tax Div., Dept. of Justice, Washington, D.C., with him on the brief, Robert N. Miller, U.S. Atty., Denver, Colo., of counsel), for defendant-appellee.

Robert E. Liles, II and Charles E. Taylor of Silverstein and Mullens, Washington, D.C. (Martin, Pringle, Oliver, Triplett & Wallace, Wichita, Kan., of counsel), filed a brief on behalf of amicus curiae Beech Aircraft Corp.

Before McKAY and SETH, Circuit Judges, and JENKINS, District Judge*.

---

* Honorable Bruce S. Jenkins, Chief United States District Judge for the District of Utah, sitting by designation.

SETH, Circuit Judge.

This case is on appeal pursuant to certification by the trial court under § 1292(b). The court had disallowed 577 F.Supp. 833, in an action seeking refunds, deductions taken by Stearns-Roger Corporation as insurance premiums for a four-year period in the amount of about six million dollars.

The payments in question were made by Stearns-Roger to Glendale Insurance Company which it had incorporated under the Colorado Captive Insurance Company Act (Colo.Rev.Stat. § 10–6–101 et seq.). The Act permits such a captive insurance company to insure risks only of the parent company, its subsidiaries, its affiliates and associated companies. Such a company may be organized when the state insurance commissioner is satisfied that there is no alternative source for adequate insurance.

All the stock of Glendale was owned by Stearns-Roger and by one of its wholly owned subsidiaries. Stearns-Roger provided the necessary capital at the outset and provided additional capital later. In addition Stearns-Roger indemnified Glendale up to $3,000,000.00 for losses it might suffer. No occasion arose to use the indemnity agreement, but it was in effect during the years in question.

Glendale insured Stearns-Roger, its fifteen subsidiaries, its affiliates and its participants in projects where Stearns-Roger assumed their risks of loss. The coverage was for errors and omissions, general liability and workers' compensation. Stearns-Roger paid Glendale for its coverage and it deducted on its tax returns these payments as "insurance premiums." There were also some deductions claimed for premiums paid to third party carriers which were disallowed to the extent these were ceded to Glendale.

The trial court found, and it is not challenged, that Glendale was a separate and distinct company; that Stearns-Roger had found it difficult or impossible to obtain the coverage it required from commercial insurance companies; that Glendale was not a sham; it was operated "as a corporate entity distinct from Stearns-Roger"; it had been incorporated for a legitimate business purpose and was not created for the purpose of tax avoidance or evasion.

The losses incurred by Stearns-Roger (or its subsidiaries) covered by the policies issued by Glendale were paid to Stearns-Roger. The payments for coverage were, of course, paid by Stearns-Roger to Glendale. "Insurance" is not defined by the Internal Revenue Code. The issue presented here is whether the payments made to Glendale and sought to be deducted by Stearns-Roger were "insurance premiums" which had they been paid for the typical coverage by a third-party commercial company, would ordinarily have been deductible as business expenses (§ 162(a)).

Self-insurance plans whereby reserves are created or payments made into funds, accounts or trusts do not constitute "insurance" for these purposes. There is no shifting of the risk to others but instead reserves for possible losses are created. Payments so made are not deductible as insurance premiums. *Spring Canyon Coal Co. v. Commissioner*, 43 F.2d 78 (10th Cir.1930).

In *Helvering v. LeGierse*, 312 U.S. 531, 61 S.Ct. 646, 85 L.Ed. 996 (1941) the Court held that for there to be "insurance" there must be a shifting of the risk of loss or a spreading of the risk. This statement of the elements of insurance has been applied for tax purposes generally. We are not prepared to use or to write a new definition of "insurance" as appellant suggests.

In the case before us the risk of loss did not leave the parent company. The payments for coverage went from parent to subsidiary but the ultimate burden for losses was always on the parent. Under *LeGierse* this did not constitute a shifting of the risk. In substance it was self-insurance. Thus the arrangement was not "insurance" for the purposes under consideration. The taxpayer's assets were diminished by any casualty loss.

In *Carnation Co. v. Commissioner*, 640 F.2d 1010 (9th Cir.1981), the court considered a comparable arrangement between a parent and a subsidiary. The only difference was that the subsidiary reinsured ninety percent of a third party commercial insurance company's liability under policies issued to the parent. Ninety percent of the premiums were remitted by the third party company to the subsidiary. There was in *Carnation* an agreement by the parent to provide additional capital if required. The Tax Court had held that the premiums to the extent they were ceded to the subsidiary could not be deducted because the risk as to that percentage had not been shifted. The Court of Appeals referred to the risk shifting requirement and the ineligibility of self-insurance, looked at the substance of the arrangement and held there was no insurance. We see no substantial difference between this case and *Carnation,* and we cannot agree with plaintiff that the analysis in *Carnation* was wrong.

The result we here reach is not inconsistent with the fact that the parent and the subsidiary are separate corporate entities. *Moline Properties v. Commissioner,* 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943). The separation is not ignored instead the focus must be on the nature and consequences of the payments by the parent and the Supreme Court's requirement that there must be a shift of risk to have insurance. There is no question that the parent paid the subsidiary, but the consequence of the payments sought to be deducted nevertheless still left the parent with its losses. The parent did not for its money receive "insurance." Many intercorporate transfers of funds are recognized, but in the circumstances before us nothing was received by the parent company in return. No insurance resulted. *United States v. Consumer Life Insurance Co.,* 430 U.S. 725, 97 S.Ct. 1440, 52 L.Ed.2d 725 (1977) does not lead to a different result.

The Tax Court in *Clougherty Packing Co. v. Commissioner,* 84 T.C. 948 (1985) No. 61, recently followed the *Carnation* decision. There were however seven dissenters. There the parent, a California company, used the method considered in *Carnation* of workers' compensation reinsurance by a wholly owned subsidiary to which is ceded a percentage of the premiums paid to a third-party company. There is no mention of an agreement by the parent to provide more capital if needed, an element in *Carnation.* The Tax Court noted that an appeal from its ruling would go to the Ninth Circuit which had decided the *Carnation* case.

The Tax court in *Clougherty* quoted *Steere Tank Lines, Inc. v. United States,* 577 F.2d 279 (5th Cir.1978), examined the consequences of the transaction and followed *Carnation.* The dissent apparently felt that there had been a shifting of the risk to a separate entity. It was to them significant that there was no undertaking by the parent to provide more capital as in *Carnation.*

The parent in the case before us did not receive protection that would have been provided by "insurance." The reality of the transaction has to be recognized. The comparison of the arrangement here made to self-insurance cannot be ignored. The parent provided the necessary funds to the subsidiary by way of what it called "premiums" to meet the casualty losses of the parent. The subsidiary retained these funds until paid back to the parent on losses. This does not appear to have different consequences than did the payments in *Spring Canyon Coal Co. v. Commissioner,* 43 F.2d 78 (10th Cir.1930), by the company to a separate fund for workers' compensation administered by an independent person. The payments there were to be in an amount comparable to that required under the State Insurance Fund and claims were paid out of the fund as were administrative expenses. The court in *Spring Canyon* held that the obligations to compensate had to be met but the fund was available for corporate use. We there said: "Taxation is a practical matter, and form must give way to substance." This was applied also to the term "expenses" and the opinion continued, "and in truth and sub-

stance the sums set aside by the petitioner were not 'expenses' of the business. They were ... reserves against contingent losses." In the case before us we must again consider economic reality. The sums were with the subsidiary for future use and would be included in the Stearns-Roger balance sheet. Again the risk of loss did not leave the parent corporation.

The trial court did not consider the indemnity agreement in its analysis and we do not do so either.

AFFIRMED.