**HUMANA INC., Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 88–1403.**

United States Court of Appeals, Sixth Circuit.

Argued March 20, 1989.

Decided July 27, 1989.

248

Laramie L. Leatherman, Charles J. Lavelle, James E. Milliman (argued), Greenebaum, Doll & McDonald, Louisville, Ky., for petitioner-appellant.

Kenneth L. Greene (argued), David I. Pincus, U.S. Dept. of Justice, Tax Div. Appellate Section, Washington, D.C., Gary R. Allen, Acting Chief, William S. Rose, Jr., Asst. Atty. Gen., Dept. of Justice, Tax Div., Washington, D.C., for respondent-appellee.

Before MARTIN and MILBURN, Circuit Judges, and HACKETT,* District Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

Humana Inc. and its wholly owned subsidiaries with which it files a consolidated federal income tax return appeal the decision of the United States Tax Court determining deficiencies against them with respect to their 1976–1979 fiscal years on the basis that: 1) sums paid by Humana Inc. to its captive insurance subsidiary, Health Care Indemnity, on its own behalf and on behalf of other wholly owned subsidiaries did not constitute deductible insurance premiums under the Internal Revenue Code § 162(a) (1954), and 2) such payments are not deductible under the Internal Revenue Code § 162 (1954) as ordinary and necessary business expenses as payments to a captive insurance company are equivalent to additions to a reserve for losses.

Humana Inc. and its subsidiaries operate hospitals whose insurance coverage was cancelled. Humana Inc. incorporated Health Care Indemnity, Inc., as a Colorado captive insurance company. In order to facilitate the incorporation of Health Care Indemnity, Humana Inc. also incorporated Humana Holdings, N.V., as a wholly owned subsidiary in the Netherland Antilles. The only business purpose of Humana Holdings was to assist in the capitalization of Health Care Indemnity.[1] At the time of the initial capitalization, Health Care Indemnity issued 150,000 shares of preferred stock and 250,000 shares of common stock. Of these, Humana Holdings, the wholly owned Netherland subsidiary, purchased the preferred stock for $250,000.00 in cash (its entire capitalization) and Humana Inc. purchased 150,000 shares of Health Care Indemnity's common stock for $750,000.00 in the form of irrevocable letters of credit (as provided by Colorado statute).

Health Care Indemnity, the captive insurance subsidiary of Humana Inc., provided insurance coverage for Humana Inc. and its other subsidiaries. Humana Inc. paid to Health Care Indemnity amounts which it treated as insurance premiums. Humana Inc. allocated and charged to the subsidiaries portions of the amounts paid representing the share each bore for the hospitals each operated. The remainder represented Humana Inc.'s share for the hospitals which it operated. The total sums, $21,055,575.00, were deducted on a consolidated income tax return as insurance premiums.

The Commissioner, in accordance with the position outlined in Rev.Rul. 77–316, 1977–2 C.B. 52, disallowed the deductions

* The Honorable Barbara K. Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Humana Incorporated owns 75% of Health Care Indemnity and Humana's Netherland affiliate owns 25%. Technically, therefore, Humana is not a 100% owner of Health Care Indemnity.

However, the tax court stated, and both parties agreed, that the only business purpose of the offshore affiliate was to provide capital for Health Care Indemnity. Therefore, the court and both parties agreed to treat Health Care Indemnity as a wholly-owned subsidiary of Humana.

and asserted deficiencies against Humana Inc. and the subsidiaries. Humana Inc. and its subsidiaries filed petitions in the tax court for redeterminations of the deficiencies assessed against them. On August 14, 1985, the tax court issued a memorandum opinion upholding the Commissioner's determination. Following a petition for reconsideration, the tax court withdrew that opinion. Humana Inc. requested full court review. On January 26, 1987, the tax court, after review by the entire nineteen member court, upheld the Commissioner. *Humana Inc. and Subsidiaries v. Commissioner*, 88 T.C. 197 (1987).

The opinion of the tax court contains a twelve member majority written by Judge Goffe, an eight member concurrence written by Judge Whitaker and joined by seven members of the majority, a two member concurring opinion written by Judge Hamblen and joined by Judge Whitaker, and a seven member dissent written by Judge Korner. The twelve member majority relied on its prior decisions in *Carnation Company v. Commissioner*, 71 T.C. 400 (1978), *aff'd.* 640 F.2d 1010 (9th Cir.1981), *cert. denied*, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 381 (1981) and *Clougherty Packing Company v. Commissioner*, 84 T.C. 948 (1985), *aff'd.* 811 F.2d 1297 (9th Cir. 1987), and held 1) that sums paid by Humana Inc. to Health Care Indemnity on its own behalf (described as the "parent-subsidiary" issue) were not deductible as ordinary and necessary business expenses for insurance premiums, and 2) the sums charged by Humana Inc. to the operating subsidiaries (described as the "brother-sister" issue) were also not deductible on the consolidated income tax return as ordinary and necessary business expenses for insurance premiums. The majority reasoned that there was no insurance because the risks of loss were not shifted from Humana Inc. and its subsidiaries to Health Care Indemnity. In so holding, the majority specifically rejected adoption of the economic family concept argued by the Commissioner.

The tax court noted that the second issue, the brother-sister issue—whether the sums charged by Humana Inc. to its operating subsidiaries were deductible on the consolidated income tax returns as ordinary and necessary business expenses as insurance premiums—was an issue of first impression before the court. The court claimed that the issue had been decided in favor of denying the premiums as deductible in two other cases, *Stearns–Roger Corp. v. United States*, 774 F.2d 414 (10th Cir.1985) and *Mobil Oil Corp. v. United States*, 8 Cl.Ct. 555 (1985). The majority stated that *Stearns–Roger* and *Mobil* extended the rationale of *Carnation* and *Clougherty* to the "brother-sister" factual pattern. In holding that Humana Inc. did not shift the risk from the subsidiaries to Health Care Indemnity by charging its subsidiaries portions of the amounts paid representing the share each bore for the hospitals each operated, the tax court accepted the joint opinion of two experts, Dr. Plotkin and Mr. Stewart. Dr. Plotkin and Mr. Stewart stated:

> Commercial insurance is a mechanism for transferring the financial uncertainty arising from pure risks faced by one firm to another in exchange for an insurance premium.... The essential element of an insurance transaction from the standpoint of the insured (e.g. Humana and its hospital network), is that no matter what perils occur, the financial consequences are known in advance.... A firm placing its risk in a captive insurance company in which it holds a sole ... ownership position, is not relieving itself of financial uncertainty.... True insurance relieves the firm's balance sheet of any potential impact of the financial consequences of the insured peril.... [However] as long as the firm deals with its captive, its balance sheet cannot be protected from the financial vicissitudes of the insured peril.

*Humana*, 88 T.C. at 219–25 (1987).

The majority also declared that payments to a captive insurance company are equivalent to additions to a reserve for losses and, therefore, not deductible under the Internal Revenue Code § 162 (1954) as ordinary and necessary business expenses paid or incurred during the taxable years in issue.

*Stearns–Roger Corp. v. United States*, 774 F.2d 414 (10th Cir.1985); *Mobil Oil Corp. v. United States*, 8 Cl.Ct. 555 (1985).

The eight member concurrence agreed with the majority's conclusion on both issues but felt uncomfortable with the majority's reliance on the expert witnesses, Dr. Plotkin and Mr. Stewart, whose theories rested heavily upon the economic family concept of captive insurance companies. They wrote to affirm that they were holding against Humana solely on the basis that the contracts between Humana Inc. and Health Care Indemnity and the contracts between Humana Inc.'s subsidiaries and Health Care Indemnity were not insurance contracts because of the lack of risk shifting. *Humana*, 88 T.C. at 231 (1987) (Whitaker, J., concurring).

A two member concurrence wrote to express concern about the "economic family" concept. They noted that the Commissioner's discussions of the economic family concept did not square with *Moline Properties v. Commissioner*, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943). The Supreme Court in *Moline Properties* held that each corporate taxpayer was a separate entity for tax purposes. The two person concurrence felt that the *Moline Properties* issue was injected unnecessarily by way of the economic family concept analogy. The two member concurrence noted that the majority cites proponents of the economic family concept and felt that this was neither appropriate nor necessary. The two member concurrence stated that they "strongly believe that we should decide the issue solely on a lack of risk shifting and risk distribution basis." *Humana*, 88 T.C. at 237 (1987) (Hamblen, J., concurring).

The seven member dissent concurred in part with the majority that the premiums paid to Health Care Indemnity by Humana Inc. for insurance on itself may not be deducted as insurance premiums. They dissented with respect to the majority's holding that the same result applies to premiums paid by Humana Inc.'s subsidiaries to Health Care Indemnity for comparable insurance on *them* and *their employees*. The dissent stated that neither *Carnation*

nor *Clougherty* decided the issue of deductibility of insurance premiums where the insurance contract was between corporations related as brother and sister. The dissent stated that the record in this case showed that 1) the wholly owned subsidiaries of Humana Inc. were insured under the subject policies, 2) the subsidiaries were related to Health Care Indemnity as brother-sister, not as parent-subsidiaries, 3) the amounts due under the subject policies as premiums were billed by Health Care Indemnity to Humana on a monthly basis, 4) Humana paid the total amount billed by Health Care Indemnity on a monthly basis, 5) later, the foregoing amounts were allocated and charged back by Humana, Inc. to its appropriate subsidiaries.

The dissent further noted that the majority rested heavily upon the joint opinion of the experts Plotkin and Stewart. However, these opinions gave no support to the position of the majority on the brother-sister question. The thrust of the Plotkin, Stewart testimony was aimed at the parent-subsidiary question, the reasoning being that the subsidiary's stock was shown as an asset on the parent's balance sheet. If the parent suffered an insured loss which a subsidiary had to pay, the assets of the subsidiary insurer would be depleted by the amount of the payment. This, in turn, reduced the value of the subsidiary shares as an asset of the parent. In effect, the assets of the insured parent were bearing the loss as far as the true economic impact was concerned. The dissent claimed that the reasoning presented by the experts provided no support for the majority's position in the brother-sister context. *Humana*, 88 T.C. at 243–44 (1987) (Korner, J., dissenting). Humana Inc.'s insured subsidiaries owned no stock in Health Care Indemnity, nor vice versa. The subsidiarys' balance sheets and net worth were in no way affected by the payment of an insured claim by Health Care Indemnity. When the subsidiaries paid their own premiums for their own insurance, they shifted their risks to Health Care Indemnity. The dissent argued that the rationale of *Carnation* and *Clougherty* thus did not apply. *Id.* at 247.

The dissent further noted that the cases cited by the tax court, *Stearns–Roger, Mobil Oil*, and *Beech Aircraft v. United States*, 797 F.2d 920 (10th Cir.1986), each explicitly or implicitly adopted the economic family concept. However, Health Care Indemnity and the hospital subsidiaries were valid separate business entities conducting active legitimate businesses devoid of sham. No facts stated the contrary. The dissent argued that to hold the insurance contracts between them invalid because they are one "economic family" and what happens to one happens to all of them ignored the separate entities of Humana Inc., its hospital subsidiaries, and Health Care Indemnity. Such a holding violated the time honored rule under *Moline Properties* that each taxpayer is a separate entity for tax purposes.

## I.

We review *de novo* the legal standard applied by the tax court in determining whether Humana Inc.'s payments to its captive insurance company, Health Care Indemnity, for itself and on behalf of its subsidiaries constitute ordinary and necessary business expenses for insurance. *Rose v. Commissioner*, 868 F.2d 851 (6th Cir.1989). The tax court's findings of fact shall not be overturned unless clearly erroneous. *Id.* at 853.

The Internal Revenue Code § 162(a) (1954) allows a deduction for all ordinary and necessary business expenses paid or incurred during the taxable year in carrying on a trade or business. Insurance premiums in the case of a business are generally deductible business expenses. Treas. Reg. § 1.162–1(a) (1954). Although the term "insurance" is not self-defined by the Internal Revenue Code, the Supreme Court in *Helvering v. Le Gierse*, 312 U.S. 531, 61 S.Ct. 646, 85 L.Ed. 996 (1941), provided the test for defining "insurance" for federal tax purposes.

An insurance contract involves (1) risk shifting and (2) risk distribution. *Helvering v. Le Gierse*, 312 U.S. 531, 539, 61 S.Ct. 646, 649, 85 L.Ed. 996 (1941) (where an annuity contract completely neutralized the risk inherent in a life insurance contract when both contracts were considered together as one transaction). Risk shifting involves the shifting of an identifiable risk of the insured to the insurer. The focus is on the individual contract between the insured and the insurer. Risk distribution involves shifting to a group of individuals the identified risk of the insured. The focus is broader and looks more to the insurer as to whether the risk insured against can be distributed over a larger group rather than the relationship between the insurer and any single insured. *Commissioner of Internal Revenue v. Treganowan*, 183 F.2d 288, 291 (2nd Cir.), *cert. denied*, 340 U.S. 853, 71 S.Ct. 82, 95 L.Ed. 625 (1950).

■ We believe that the tax court correctly held on the first issue, the parent-subsidiary issue, that under the principles of *Clougherty* and *Carnation* the premiums paid by Humana Inc., the parent to Health Care Indemnity, its wholly owned subsidiary, did not constitute insurance premiums and, therefore, were not deductible. Humana Inc. did not shift the risk to Health Care Indemnity. As the Tenth Circuit stated in *Stearns–Roger:*

> The comparison of the arrangement here made to self-insurance cannot be ignored. The parent provided the necessary funds to the subsidiary by way of what it called "premiums" to meet the casualty losses of the parent. The subsidiary retained these funds until paid back to the parent on losses.... In the case before us we must again consider economic reality. The sums were with the subsidiary for future use and would be included in the Stearns–Roger balance sheet. Again the risk of loss did not leave the parent corporation.

*Stearns–Roger*, 774 F.2d at 416–17. We believe the tax court also correctly held that *if* the subject payments made by the wholly owned subsidiaries were not deductible as insurance premiums, they likewise should be considered additions to a reserve for losses and not deductible under the Internal Revenue Code § 162 (1954) as ordinary and necessary business expenses. *Stearns–Roger*, 774 F.2d at 415; *Mobil Oil,*

8 Cl.Ct. at 567; *Steere Tank Lines, Inc. v. United States*, 577 F.2d 279, 280 (5th Cir. 1978), *cert. denied* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 634 (1979); *Spring Canyon Coal v. Commissioner*, 43 F.2d 78 (10th Cir.1930), *cert. denied* 284 U.S. 654, 52 S.Ct. 33, 76 L.Ed. 555 (1931). We find no error in fact or law with regard to this first issue.

■ With regard to the second issue, the brother-sister issue, we believe that the tax court incorrectly extended the rationale of *Carnation* and *Clougherty* in holding that the premiums paid by the subsidiaries of Humana Inc. to Health Care Indemnity, as charged to them by Humana Inc., did not constitute valid insurance agreements with the premiums deductible under Internal Revenue Code § 162(a) (1954). We must treat Humana Inc., its subsidiaries and Health Care Indemnity as separate corporate entities under *Moline Properties*. When considered as separate entities, the first prong of *Le Gierse* is clearly met. Risk shifting exists between the subsidiaries and the insurance company. There is simply no direct connection in this case between a loss sustained by the insurance company and the affiliates of Humana Inc. as existed between the parent company and the captive insurance company in both *Carnation* and *Clougherty*.

In so stating, we adopt the analysis of the Ninth Circuit in *Clougherty*. It dealt with the parent-subsidiary issue and held that Clougherty could not deduct payments as insurance to Lombardy, its captive insurance company, as there was no risk shifting. Its holding was explained as follows, 811 F.2d at 1305:

> In reaching our holding, we do not disturb the legal status of the various corporate entities involved, either by treating them as a single unit or otherwise. Rather, we examine the economic consequences of the captive insurance arrangement to the "insured" party to see if that party has, in fact, shifted the risk. In doing so, we look only to the *insured's assets*, i.e., those of Clougherty.... Viewing only Clougherty's assets and considering only the effect of a claim on those assets, it is clear that the

risk of loss has not been shifted from Clougherty. (emphasis added).

Because the Ninth Circuit's analysis does "not disturb the separate legal status of the various corporate entities," we adopt the same line of reasoning to decide the brother-sister issue in the case before us. If we look solely to the insured's assets, i.e., those of the various affiliates of Humana Inc., and consider only the effect of a claim on those assets, it is clear that the risk of loss has shifted from the various affiliates to Health Care Indemnity.

The only open question is whether there was risk distribution, the second prong of the test for an insurance contract under *Le Gierse*. We hold that there was both risk shifting and risk distribution between the subsidiaries and the captive insurance company. The tax court, therefore, erred on this second "brother-sister" issue.

## II.

### A. Risk Shifting

We recognize, as we must, the separate corporate existence of the affiliates of Humana Inc. and that of Health Care Indemnity. As the Supreme Court stated in *Moline Properties*, "[S]o long as [its] purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity." *Moline Properties*, 319 U.S. at 439, 63 S.Ct. at 1134. See *Clougherty*, 811 F.2d at 1302 (where the Ninth Circuit stated that, "While *Moline Properties* concerned an attempt by the sole shareholder of a corporation to report on his personal return income attributable to the corporation, the rule it enunciates applies as well to a corporation and its subsidiaries."). See also *National Carbide Corporation v. Commissioner*, 336 U.S. 422, 429, 69 S.Ct. 726, 730, 93 L.Ed. 779 (1949) (where the *Moline Properties* doctrine was applied for federal income tax purposes even where a parent corporation controlled its wholly-owned subsidiary). We, therefore, look solely to the relationship between the affiliates and Health Care Indemnity and conclude the facts of this

case support a finding of risk shifting as between the affiliates of Humana Inc. and Health Care Indemnity.

Health Care Indemnity met the State of Colorado's statutory minimum requirements for an insurance company, was recognized as an insurance company following an audit and certification by the State of Colorado, and is currently a valid insurance company subject to the strict regulatory control of the Colorado Insurance Department. The State of Colorado has either approved or established the premium rate for insurance between the Humana affiliates and Health Care Indemnity. As a valid insurance company under Colorado law, Health Care Indemnity's assets cannot be reached by its shareholders except in conformity with the statute. Colorado Rev.Stat. 10-3-503.

Health Care Indemnity was fully capitalized and no agreement ever existed under which the subsidiaries or Humana Inc. would contribute additional capital to Health Care Indemnity. The hospital subsidiaries and Humana Inc. never contributed additional amounts to Health Care Indemnity nor took any steps to insure Health Care Indemnity's performance. It is also undisputed that the policies purchased by the hospital subsidiaries and Humana Inc. were insurance policies as commonly understood in the industry. The hospital subsidiaries and Humana Inc. entered into bona fide arms length contracts with Health Care Indemnity. Health Care Indemnity was formed for legitimate business purposes. Health Care Indemnity and the hospital subsidiaries conduct legitimate businesses and are devoid of sham. No suggestion has been made that the premiums were overstated or understated. Health Care Indemnity did not file its income tax returns on a consolidated basis with Humana Inc. and its subsidiaries. Humana Inc.'s insured subsidiaries own no stock in Health Care Indemnity, nor vice versa.

As noted, *supra,* the tax court majority cites *Mobil Oil* in support of its holding on the brother-sister issue. The court in *Mobil Oil* stated that the imposition of a tax must be based on economic reality and the incidence of taxation depends upon the substance of the transaction and the relationship of the parties. *Mobil Oil,* 8 Cl.Ct. at 567. The economic reality of insurance between a parent and a captive insurance company is that the captive's stock is shown as an asset on the parent's balance sheet. If the parent suffers an insured loss which the captive has to pay, the assets of the captive will be depleted by the amount of the payment. This will reduce the value of the captive's shares as an asset of the parent. In effect, the assets of the parent bear the true economic impact of the loss. The economic reality, however, of insurance between the Humana subsidiaries and Health Care Indemnity, where the subsidiaries own no stock in the captive and vice versa, is that when a loss occurs and is paid by Health Care Indemnity the net worth of the Humana affiliates is not reduced accordingly. The subsidiaries' balance sheets and net worth are not affected by the payment of an insured claim by Health Care Indemnity. In reality, therefore, when the Humana subsidiaries pay their own premiums under their own insurance contracts, as the facts show, they shift their risk to Health Care Indemnity.

The tax court majority has argued that *Stearns–Roger* and *Mobil* extend the rationale of *Carnation* and *Clougherty* to cover the brother-sister factual pattern of *Humana* in favor of denying deductions of payments by the Humana affiliate corporations. The tax court majority stated that "they likewise extend the rationale to the . . . brother-sister factual pattern presented in the case." *Humana,* 88 T.C. at 217.

Neither *Carnation* nor *Clougherty* themselves, nor *Stearns–Roger* nor *Mobil Oil* provide a basis for denying the deductions in the brother-sister issue. *Carnation* did not deal with a captive insurance company of a parent corporation insuring separate and distinct wholly owned affiliate corporations of that parent. *Carnation* dealt solely with the parent-subsidiary issue, not the brother-sister issue. Likewise, *Clougherty* dealt only with the parent-subsidiary issue and not the brother-sister is-

sue. Nothing in either *Carnation* or *Clougherty* lends support for denying the deductibility of the payments in the brother-sister context.

*Stearns–Roger* and *Mobil Oil* also do not provide a basis for extending *Carnation* and *Clougherty* to cover the brother-sister situation because both clearly rest on the economic family argument that the tax court claimed to reject in *Humana.* The court in *Mobil Oil* made no distinctions between the various entities involved—Mobil, its domestic and foreign subsidiaries, and the various captive insurance companies. The court treated them all as one economic unit. The court cited for support cases resting on the economic family argument, looked only to the parent and stated that the "risk of loss remains with the parent," and thus there was no insurance. *Mobil Oil*, 8 Cl.Ct. at 570.

The Tenth Circuit in *Stearns–Roger v. United States*, 774 F.2d 414 (1985), rested its holding impliedly if not expressly on the economic family theory. On appeal pursuant to certification under § 1292(b), the Tenth Circuit affirmed the district court's holding, 577 F.Supp. 833, 838 (1984), in which the district court concluded:

> Its [Glendale Insurance Company] only business is to insure its parent corporation which wholly owns it and ultimately bears any losses or enjoys any profits it produces. Both profits and losses stay within the *Stearns–Roger* "economic family." I conclude that since the agreement between *Stearns–Roger* and Glendale did not shift the risk of losses, it was not an insurance contract for federal tax purposes.[2]

The tax court cannot avoid direct confrontation with the separate corporate existence doctrine of *Moline Properties* by claiming that its decision does not rest on "economic family" principles because it is merely *reclassifying* or *recharacterizing* the transaction as nondeductible additions to a reserve for losses. The tax court argues in its opinion that such "recharacterization" does not disregard the separate corporate status of the entities involved, but merely disregards the particular transactions between the entities in order to take into account *substance* over form and the "economic reality" of the transaction that no risk has shifted.

■ The tax court misapplies this substance over form argument. The substance over form or economic reality argument is not a broad legal doctrine designed to distinguish between legitimate and illegitimate transactions and employed at the discretion of the tax court whenever it feels that a taxpayer is taking advantage of the tax laws to produce a favorable result for the taxpayer. *Higgins v. Smith*, 308 U.S. 473, 476, 60 S.Ct. 355, 357, 84 L.Ed. 406 (1940) (where the Court stated, "The Government urges that the principle underlying *Gregory v. Helvering* finds expression in the rule calling for a realistic approach to tax situations. As so broad and unchallenged a principle furnishes only a general direction, it is of little value in the solution of tax problems."). The substance over form analysis, rather, is a distinct and limited exception to the general rule under *Moline Properties* that separate entities must be respected as such for tax purposes. The substance over form doctrine applies to disregard the separate corporate entity where "Congress has evinced an intent to the contrary...." *Clougherty*, 811 F.2d at 1302. As the Court stated in *Moline*, 319 U.S. at 439, 63 S.Ct. at 1134, "A particular legislative purpose, such as the development of the merchant marine, ... may call for the disregarding of the separate entity, *Munson S.S. Line v. Commissioner*, 77 F.2d 849 [2nd Cir.1935], as may the necessity of striking down frauds

---

**2.** The *Carnation* case involved an undercapitalized foreign captive, with a capitalization agreement running to the captive from the parent. *Stearns–Roger*, although involving an adequately capitalized domestic captive, involved an indemnification agreement running from the parent to the captive. A third case, *Beech Aircraft*, 797 F.2d 920 (10th Cir.1986), mentioned as support for the majority position, also involved an undercapitalized captive. These weaknesses alone provided a sufficient basis from which to find no risk shifting and to decide the cases in favor of the Commissioner. The *Humana* case contained no such indemnification agreement and Health Care Indemnity was adequately capitalized.

on the tax statute, *Continental Oil v. Jones*, 113 F.2d 557 [10th Cir.1940]." However, as the Ninth Circuit pointed out in *Clougherty*, "Congress ... has remained silent with respect to the taxation of captive insurers...." 811 F.2d at 1302. In general, absent specific congressional intent to the contrary, as is the situation in this case, a court cannot disregard a transaction in the name of economic reality and substance over form absent a finding of sham or lack of business purpose under the relevant tax statute. *Clougherty*, 811 F.2d at 1302; *Gregory v. Helvering*, 293 U.S. 465, 469, 55 S.Ct. 266, 269, 79 L.Ed. 596 (1935); *Higgins v. Smith*, 308 U.S. 473, 477, 60 S.Ct. 355, 357, 84 L.Ed. 406 (1940).

In the instant case, the tax court found that Humana had a valid business purpose for incorporating Health Care Indemnity. Congress has manifested no intent to disregard the separate corporate entity in the context of captive insurers. In short, the substance over form or economic reality argument under current legal application does not provide any justification for the tax court to reclassify the insurance premiums paid by the subsidiaries of Humana Inc. as nondeductible additions to a reserve for losses. The test to determine whether a transaction under the Internal Revenue Code § 162(a) (1954) is legitimate or illegitimate is not a vague and broad "economic reality" test. The test is whether there is risk shifting and risk distribution. Only if a transaction fails to meet the above two-pronged test can the court justifiably *reclassify* the transaction as something other than insurance.

We have both risk shifting and risk distribution involved in the transactions between the Humana subsidiaries and Health Care Indemnity. The transactions between Health Care Indemnity and the separate affiliates of Humana, therefore, are properly within the statutory language of the Internal Revenue Code § 162(a) (1954) as interpreted in *Le Gierse*. As long as the transactions meet the purposes of the tax statute, *Higgins*, 308 U.S. at 477, 60 S.Ct. at 357, the substance of the transactions are valid and legitimate regardless of its form and regardless of the tax motivation

on the part of the taxpayers involved, *Gregory*, 293 U.S. at 469, 55 S.Ct. at 267.

We, therefore, find no credence in the distinction between disregarding the particular transactions between the Humana affiliates and Health Care Indemnity and disregarding the separate entities. Absent a fact pattern of sham or lack of business purpose, a court should accept transactions between related though separate corporations as proper and not disregard them because of the relationship between the parties. As the Second Circuit stated in *Kraft Foods Company v. Commissioner*, 232 F.2d 118, 123–24 (2nd Cir.1956):

> [I]t is one thing to say that transactions between affiliates should be carefully scrutinized and sham transactions disregarded, and quite a different thing to say that a genuine transaction affecting legal relations should be disregarded for tax purposes merely because it is a transaction between affiliated corporations. We think that to strike down a genuine transaction because of a parent's subsidiary relation would violate the scheme of the statute and depart from the rules of law heretofore governing inter-company transactions.

*Id.* 123–24.

■ Finally, the tax court argues that if it did not deny the deductions in the brother-sister context, Humana Inc. could avoid the tax court's holding on issue one, the parent-captive issue, that insurance premiums paid by the parent to a captive insurance company are not deductible and accomplish the same purpose through its subsidiaries. Such an argument provides no *legal* justification for denying the deduction in the brother-sister context. The legal test is whether there has been risk distribution and risk shifting, not whether Humana Inc. is a common parent or whether its affiliates are in a brother-sister relationship to Health Care Indemnity. We do not focus on the relationship of the parties per se or the particular structure of the corporation involved. We look to the assets of the insured. *Clougherty*, 811 F.2d at 1305. If Humana changes its corporate structure and that change involves risk

shifting and risk distribution, and that change is for a legitimate business purpose and is not a sham to avoid the payment of taxes, then it is irrelevant whether the changed corporate structure has the side effect of also permitting Humana Inc.'s affiliates to take advantage of the Internal Revenue Code § 162(a) (1954) and deduct payments to a captive insurance company under the control of the Humana parent as insurance premiums.

The Commissioner argues for us to adopt its economic family approach because this approach recognizes the economic reality of the transaction between Humana affiliates and the captive insurance company, Health Care Indemnity. We do not, however, as the government argues, look to Humana Inc., the parent, to determine whether premiums paid by the affiliates to Health Care Indemnity are deductible. To do so would be to treat Humana Inc., its affiliates and Health Care Indemnity as one "economic unit" and ignore the reality of their separate corporate existence for tax purposes in violation of *Moline Properties*. Even the tax court explicitly rejected the Commissioner's economic family argument. *Humana*, 88 T.C. at 230.[3]

The Commissioner has also argued that even if we do not adopt the economic family argument, we should look through the form of the transaction between the Humana affiliates and Health Care Indemnity to the substance of the transaction and hold that in substance there was no risk shifting. It would appear that this is just another way of stating that transactions between affiliates for tax purposes shall be

disregarded if devoid of business purposes or a sham. We have already discussed in detail this exception to *Moline Properties, supra*. However, if the Commissioner's form over substance or "economic reality" argument is an attempt to broaden the "sham" exception or fashion a new exception, we reject the argument.

## B. Risk Distribution

■ Treating the Humana affiliates and Health Care Indemnity as separate entities and rejecting the economic family argument leads to the conclusion that the first prong of the *Le Gierse* test for determining "insurance" has been met—there is risk shifting between the Humana affiliates and Health Care Indemnity. However, we must also satisfy the second prong of *Le Gierse* and find risk distribution. As stated, *supra*, risk distribution involves shifting to a group of individuals the identified risk of the insured. The focus is broader and looks more to the insurer as to whether the risk insured against can be distributed over a larger group rather than the relationship between the insurer and any single insured. *Commissioner of Internal Revenue v. Treganowan*, 183 F.2d 288, 291 (2nd Cir.), *cert. denied*, 340 U.S. 853, 71 S.Ct. 82, 95 L.Ed. 625 (1950). There is little authority adequately discussing what constitutes risk distribution if there is risk shifting. Just recently, the tax court in *Gulf Oil v. Commissioner*, 89 T.C. 1010, 1035 (1987), noted that insurance must consist of both risk shifting and risk distribution and that the definition of an insurance contract depended on meeting both of the

---

**3.** Although the tax court in the present case disclaims reliance on the economic family theory, its holding appears ultimately premised on the same type of analysis. In effect the tax court holds that one corporate entity cannot shift risk of loss in an insurance transaction to another corporate entity if they are in the same affiliated group. This approach conflicts with the *Moline Properties* rule of separate corporate entities. As the eight member concurrence written by Judge Whitaker pointed out:

> However, the majority refers repeatedly with apparent approval to decisions of other courts, including the opinion of the Court of Appeals of the Ninth Circuit affirming our opinion in *Carnation*, all of which follow *Car-*

*nation* and adopt the economic family concept. The majority also quotes extensively with approval from the testimony of respondent's experts, Dr. Plotkin and Mr. Stewart, who have fully swallowed respondent's economic family concept.... For these reasons, I strongly believe that we should decide the issue solely on a lack of risk shifting and risk distribution basis.

*Humana*, 88 T.C. 197, 231 (1987) (Whitaker, J., concurring).

It is this argument that we consider more logically sound than the majority. We disagree, however, in the application of the argument and find the existence of risk shifting and risk distribution.

prongs.[4] With this we firmly agree. Risk transfer and risk distribution are two separate and distinct prongs of the test and both must be met to create an insurance contract. An arrangement between a parent corporation and a captive insurance company in which the captive insures only the risks of the parent might not result in risk distribution. Any loss by the parent is not subject to the premiums of any other entity. However, we see no reason why there would not be risk distribution in the instant case where the captive insures several separate corporations within an affiliated group and losses can be spread among the several distinct corporate entities.

### III.

In conclusion, we affirm the tax court on issue one, the parent-subsidiary issue. The contracts between Humana, Inc., the parent, and Health Care Indemnity, the wholly owned captive insurance company, are not insurance contracts and the premiums are not deductible under the Internal Revenue Code § 162(a) (1954). We reverse the tax court on issue two, the brother-sister issue. The contracts between the affiliates of Humana Inc. and Health Care Indemnity are in substance insurance contracts and the premiums are deductible. Under *Moline Properties*, we must recognize the affiliates as separate and distinct corporations from Humana Inc., the parent company,

and, as such, they shifted their risk to Health Care Indemnity. Furthermore, we find there was risk distribution on the part of Health Care Indemnity given the number of separate though related corporations insured by Health Care Indemnity. Under no circumstances do we adopt the economic family argument advanced by the government.

Thus the Tax Court is affirmed on Issue One, Reversed on Issue Two and the case remanded for recomputation of the tax due.

---

**4.** The tax court noted in *Gulf Oil*, decided shortly after this *Humana* case, that if a captive insurance company insured unrelated interests outside the affiliated group of the captive insurance company, then there might be adequate risk transfer created by insuring the risks of independent third parties. The majority held that the addition of 2% of unrelated premiums is de minimis and would not satisfy the majority that the risk was transferred. However, if the premium income from unrelated parties was at least 50%, the majority stated that there would be sufficient risk transfer so that the arrangement would constitute insurance and premiums paid by the parent and affiliates to the captive insurance company would be deductible under the Internal Revenue Code § 162(a) (1954). It is unclear in the language employed by the tax court majority in *Gulf Oil* whether the appearance of unrelated third-party premiums constitutes risk shifting or risk distribution. The tax court majority refers to the appearance of un-

related third-parties as sufficient to constitute "risk transfer." If the appearance of unrelated third-parties creates "risk transfer" and by this the tax court means both risk shifting and risk distribution, the tax court majority ignores the fact that risk shifting and risk distribution are two separate and distinct prongs. The tax court majority cannot collapse the two prong test into one and claim that the appearance of unrelated third-parties creates enough risk transfer. Such is not the law. If the presence of unrelated third-parties goes to the question of risk distribution, then the tax court majority should never have reached that issue as its prior opinions, especially its opinion in *Humana,* stated that there can be no risk shifting as between a captive insurance company and a parent and its affiliated corporations where both are owned by a common parent, as was the situation in *Gulf Oil.* Thus the tax court has created its own conflict between its holding in *Humana* and its holding in *Gulf.*