RENDERED: DECEMBER 17, 2020
TO BE PUBLISHED

# Supreme Court of Kentucky

2018-SC-0155-DG

HAROLD MERRITT, INDIVIDUALLY, AND      APPELLANTS
AS COURT-APPOINTED ADMINISTRATOR
OF THE ESTATE OF KIMBERLY MERRITT,
AND AS COURT-APPOINTED
ADMINISTRATOR AND NEXT FRIEND OF
THE ESTATE OF HAROLD MERRITT, III


                 ON REVIEW FROM COURT OF APPEALS
V.                    NO. 2016-CA-1470
             FAYETTE CIRCUIT COURT NO. 15-CI-03690


CATHOLIC HEALTH INITIATIVES, INC.,      APPELLEES
AND FIRST INITIATIVES INSURANCE,
LTD.


**OPINION OF THE COURT BY JUSTICE HUGHES**

**<u>AFFIRMING</u>**

Appellant Harold Merritt, individually and as administrator of the Estates

of Kimberly Merritt and Harold Merritt, III (Merritt) brought a medical

negligence action against various healthcare defendants following the deaths of

his wife and newborn son. The medical negligence claims were settled, and the

Fayette Circuit Court subsequently denied Merritt's motion for declaratory

relief as to his bad faith insurance claim against First Initiatives Insurance,

Ltd. (First Initiatives), a foreign captive insurance entity that provides self-

insurance for Catholic Health Initiatives, Inc. (Catholic Health). The Court of

Appeals affirmed both that ruling and the trial court's grant of summary

1

judgment to First Initiatives and Catholic Health. On discretionary review, the sole issue before this Court is whether First Initiatives, as a captive insurer, is subject to the Kentucky Unfair Claims Settlement Practices Act (UCSPA). Kentucky Revised Statutes (KRS) 304.12-230. Finding that the Legislature has clearly and unequivocally excluded captive insurers from the requirements of the UCSPA, we affirm the Court of Appeals.

### FACTS AND PROCEDURAL BACKGROUND

On October 7, 2015, Harold Merritt, Jr., filed a complaint alleging that Dr. Anthony Smith, an employee of KentuckyOne Health, breached the medical standard of care and was ultimately responsible for the deaths of his wife, Kimberly, and infant son, Harold Merritt, III. In 2014 Kimberly, an expectant mother, developed placenta previa, a condition which can cause severe bleeding during pregnancy.[1] She was referred to a high-risk obstetrician who recommended that the baby be delivered by caesarian section no later than thirty-seven weeks gestation. Merritt alleges that despite having this information from the high-risk obstetrician, Dr. Smith examined Kimberly Merritt when she was at thirty-seven weeks and six days gestation and did not perform nor schedule a caesarian section. Instead, he scheduled an appointment to see Kimberly in one week.

In the early morning of April 10, 2015, Kimberly called Merritt and said she was bleeding and that something was wrong. After the line suddenly went dead, Merritt called 911. Upon arrival, Emergency Medical Services (EMS)

---

[1] Placenta previa occurs when a baby's placenta partially or totally covers the mother's cervix, which can cause severe bleeding during pregnancy and delivery. Mayo Clinic, *Placenta Previa* (May 30, 2020), https://www.mayoclinic.org/diseases-conditions/placenta-previa/symptoms-causes/syc-20352768.

2

found Kimberly unresponsive. She died shortly after being transported to the hospital by EMS. Harold Merritt, III, was delivered by post-mortem caesarian section but only survived a few hours after suffering from seizures due to complications from lack of oxygen.

In his complaint, Merritt alleged that Dr. Smith breached the standard of care by not acting in accordance with the high-risk obstetrician's recommendation. Merritt named as additional defendants St. Joseph Hospital, KentuckyOne Health, KentuckyOne Health Obstetrics and Gynecology Associates and St. Joseph Obstetrics and Gynecology (hereinafter collectively referred to as "the medical defendants"). Merritt also named as defendants Catholic Health, an entity that sponsors KentuckyOne Health and its affiliates, and First Initiatives, which provides self-insurance coverage to Catholic Health, its affiliates and employees, including KentuckyOne Health and Dr. Smith. First Initiatives is a wholly owned subsidiary of Catholic Health. Pursuant to one self-insurance agreement, First Initiatives covers all of Catholic Health's subsidiaries and their employees for employment-related conduct. Only Catholic Health pays assessments to First Initiatives for the provision of its self-insurance program—Catholic Health's affiliates do not pay for the coverage.

Merritt brought negligence, fraud, and Kentucky Consumer Protection Act claims against First Initiatives. Merritt also maintained that First Initiatives violated the UCSPA, KRS 304.12-230, by engaging in bad faith settlement negotiations.

On November 16, 2015, Merritt filed a motion for declaratory judgment seeking a declaration that First Initiatives is subject to the UCSPA and civil liability for any violations of the statute. Merritt claimed that First Initiatives

3

refused to negotiate the claims for the deaths of Kimberly and Harold Merritt, III, separately, instead offering a consolidated settlement for both. Additionally, Merritt alleged that First Initiatives attempted to leverage the undisputed claims of Harold Merritt, III, in order to settle the disputed claims of Kimberly. He also stated that First Initiatives failed to timely respond to settlement demands and provided no basis for denying various settlement demands.

Despite First Initiatives' claims that it is not subject to the UCSPA, Merritt maintained that First Initiatives does not self-insure Catholic Health and is actually in the business of insurance because it issued a policy to KentuckyOne Health and Catholic Health. Merritt also argued that First Initiatives has an independent corporate identity distinct from that of Catholic Health that renders self-insurance between the two entities impossible. With this approach, Merritt insisted First Initiatives is not a captive insurer under Kentucky law. Merritt filed an amended complaint on November 23, 2015 to include this particular declaratory judgment argument.

First Initiatives responded to the declaratory judgment motion, arguing that as a captive insurance company, it is exempt from the UCSPA. Specifically, First Initiatives contended the captive insurance agreement between Catholic Health and First Initiatives does not involve risk shifting or risk distribution like ordinary insurance, and First Initiatives is not in the business of insurance. First Initiatives also claimed that the motion was not ripe for review because the underlying claim of medical negligence had not been adjudicated or resolved.

On December 1, 2015 the trial court granted Catholic Health and First Initiatives' motion to bifurcate the bad faith claims from the underlying

4

negligence claims. The trial court also stayed all discovery concerning Merritt's bad faith claims pending a January 22, 2016 hearing on Merritt's motion for declaratory judgment and other issues.

At that time, Merritt insisted that the declaratory judgment issue was ripe for a prompt ruling and posited that if the trial court ruled that First Initiatives was subject to the UCSPA, then all pending claims would be resolved. The trial court conducted hearings on January 22, March 10, and May 6, 2016 on various issues, including declaratory judgment. On May 2, 2016, Merritt filed a supplement to his motion for declaratory judgment to provide an affidavit from the Kentucky Department of Insurance and to emphasize the importance of a ruling on the applicability of the UCSPA.

Ultimately, the trial court denied Merritt's motion for declaratory judgment on June 14, 2016. The trial court determined that the UCSPA does not apply to a self-insured person or entity. The trial court further determined that First Initiatives is a captive insurance company pursuant to KRS 304.49-010(12) because it only exists to insure Catholic Health and its affiliates, and also a foreign captive insurer under KRS 304.49-010(14) because it is located in the Cayman Islands and subject to the captive insurance laws of the Cayman Islands government. Additionally, the trial court concluded First Initiatives is not in the business of insurance under Kentucky law because its activities lack the defining aspects of insurance, namely risk shifting and risk distribution. The trial court referenced an affidavit of Phillip L. Foster, the Vice President and Chief Risk Officer of Catholic Health, which states that First Initiatives' financial statements are consolidated with Catholic Health's financial statements, as are the financial statements of all wholly-owned

5

affiliates of Catholic Health.  Unlike an entity that is in the business of insurance and able to spread loss throughout the market by way of premiums, First Initiatives is unable to shift risk due to the economic link between it and its parent corporation, Catholic Health.

Because the trial court held that the entities were exempt from the UCSPA, Catholic Health and First Initiatives moved for summary judgment.  In their motion, Catholic Health and First Initiatives argued that Merritt's claims against Catholic Health and First Initiatives were dependent on finding bad faith under the UCSPA and with that statute inapplicable the claims were legally insufficient.  They further contended that no issues of material fact remained as to Catholic Health and First Initiatives.

Merritt filed a motion to reconsider the denial of the declaratory judgment motion but conceded that the trial court correctly ruled that First Initiatives is a foreign captive insurer.  Merritt requested, however, that the trial court consider the exception in KRS 304.49-230, which states that the subtitle is not applicable to any foreign captive insurer transacting the business of insurance in Kentucky prior to July 14, 2000 unless the insurer petitions the insurance commissioner for the subtitle to apply.  Merritt asked the court to address whether First Initiatives is in the business of insurance.  Finally, Merritt stated that, rather than dismiss his claims, the trial court should allow additional discovery so that he could gather more information regarding First Initiatives' status as an insurer, including risk shifting and distribution, contracts, and its business generally.  On July 20, 2016, the trial court denied Merritt's motion to reconsider the denial of the motion for declaratory judgment, and granted Catholic Health and First Initiatives' motion

for summary judgment, dismissing all claims against Catholic Health and First Initiatives.

Merritt negotiated with Catholic Health and settled his negligence claims with the medical defendants, resulting in the dismissal of those claims on September 27, 2016. That same day the trial court entered an agreed order making the dismissal of the claims against Catholic Health and First Initiatives final and appealable. Merritt then appealed the denial of his declaratory judgment and the grant of summary judgment to Catholic Health and First Initiatives dismissing the claims against them.

In a unanimous decision, the Court of Appeals affirmed the trial court, finding that First Initiatives is a foreign captive insurance entity that provides self-insurance to Catholic Health. In considering the organization of Catholic Health and First Initiatives, the Court of Appeals recognized that Catholic Health is the parent company and First Initiatives is its subsidiary, created solely to provide insurance for its parent. Further, First Initiatives is not in the business of insurance because it is not involved in risk shifting or risk distribution. The Court of Appeals concluded that First Initiatives is not subject to the UCSPA, and that KRS 304.49-230 does not apply to First Initiatives since it is not in the business of insurance. Merritt's petition for rehearing was denied and we subsequently granted his motion for discretionary review.

## ANALYSIS

Merritt asked the trial court for a declaratory judgment that Catholic Health and First Initiatives are subject to the UCSPA. KRS 418.040 provides

7

> [i]n any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked.

Merritt sought a declaration that First Initiatives must comply with the duties and obligations of an insurer under the UCSPA and is thus subject to civil liability for any violations. Determining whether First Initiatives fits in the statutory definition of a captive insurer, and accordingly is exempt from the UCSPA, entails interpreting the statute adopted by the legislature. Statutory interpretation is a question of law, which we review de novo. *St. Joseph Hosp. v. Frye,* 415 S.W.3d 631, 632 (Ky. 2013). Here, after Merritt's unsuccessful declaratory judgment motion, the trial court granted First Initiatives and Catholic Health's summary judgment motion. Because appellate review of a summary judgment "involves only legal questions and a determination of whether a disputed material issue of fact exists," we also engage in a de novo review in those circumstances as well. *Shelton v. Kentucky Easter Seals Soc'y, Inc.*, 413 S.W.3d 901, 905 (Ky. 2013).

## I.     First Initiatives is a foreign captive insurer.

Subtitle 49 of the Kentucky Insurance Code, codified in KRS Chapter 304, specifically governs captive insurers and defines various types of insurance entities, including the following:

> (3) "Captive insurer" means any pure captive insurer, consortium captive insurer, sponsored captive insurer, special purpose captive insurer, agency captive insurer, or industrial insured captive insurer formed or issued a certificate of authority under the provisions of KRS 304.49-010 to 304.49-230. For purposes of KRS 304.49-010 to 304.49-230, a branch captive insurer shall be a pure captive insurer with respect to

8

operations in Kentucky, unless otherwise permitted by the commissioner; . . .

(12) "Pure captive insurer" means any company that insures risks of its parent and affiliated companies or controlled unaffiliated business; . . .

(14) "Foreign captive insurer" means any insurer formed to write insurance business for its parents and affiliates and licensed pursuant to the laws of any state other than Kentucky which imposes statutory or regulatory standards in a form acceptable to the commissioner on companies transacting the business of insurance in that jurisdiction. Under KRS 304.49-010 to 304.49-230, captive insurers formed under the laws of any jurisdiction other than a state of the United States shall be treated as a foreign captive insurer unless the context requires otherwise; . . . .

KRS 304.49-010 (3); (12); and (14).

Generally, a captive insurance company is "[a] company that insures the liabilities of its owner. The insured is usually the sole shareholder and the only customer of the captive insurer." *Black's Law Dictionary*, (11th ed. 2019). A subsidiary provides captive insurance to its parent company, typically "so that the parent company can deduct the premiums set aside as loss reserves." *Id.* "The creation of a captive insurance company can bring tax, economic, and commercial benefits . . . [and] can serve as a way to insure risks that are otherwise difficult to insure on the traditional insurance market." Steven Plitt, et al., 3 *Couch on Insurance*, § 39:2 (June 2020 Update).

Catholic Health is a non-profit healthcare entity and First Initiatives is its wholly owned, pure captive subsidiary. Under the Kentucky Insurance Code, First Initiatives is a pure and foreign captive insurer because it "insures risks of its parent and affiliated companies . . ." KRS 304.49-010(12), and is "formed under the laws of any jurisdiction other than a state of the United States . . . ."

9

KRS 304.49-010(14). Notably, the Kentucky Department of Insurance defines a pure captive insurer as "an insurer that only insures the risk of its parent and affiliated companies or controlled unaffiliated businesses and can include a branch captive insurer."[2] That is precisely the relationship between First Initiatives and Catholic Health.

According to Catholic Health, First Initiatives was organized to create the most efficient risk-financing program available in order to maximize Catholic Health's nonprofit resources in the furtherance of its mission to provide healthcare services to the public, with emphasis on poor and underserved communities. First Initiatives is not registered in Kentucky, nor does it conduct business anywhere in the United States. First Initiatives does not pay premium taxes in Kentucky. Its principal place of business is in the Cayman Islands, where it is subject to that country's captive insurance laws. With none of these facts in dispute, First Initiatives is a foreign captive insurer pursuant to KRS 304.49-010(14).[3]

## II. The UCSPA does not apply to captive insurers.

Kentucky's UCSPA outlines various conduct which constitutes unfair claims settlement practice, including misrepresenting pertinent facts, failing to act reasonably promptly upon communications with respect to insurance claims, and not attempting, in good faith, to effectuate prompt and equitable settlements. KRS 304.12-230. "The gravamen of the UCSPA is that an

---

[2] Kentucky Public Protection Cabinet, *Types of Captives* http://captive.insurance.ky.gov/newstatic_info.aspx?static_id=387&menuid=89 (last visited Nov. 2, 2020).

[3] As noted above, Merritt conceded this point in his motion to reconsider the trial court's denial of his motion for declaratory judgment.

insurance company is required to deal in good faith with a claimant, whether an insured or a third-party, with respect to a claim which the insurance company is contractually obligated to pay." *Davidson v. Am. Freightways, Inc.,* 25 S.W.3d 94, 100 (Ky. 2000). The statute is "intended to protect the public from unfair trade practices and fraud. It should be liberally construed so as to effectuate its purpose." *State Farm Mut. Auto. Ins. Co. v. Reeder,* 763 S.W.2d 116, 118 (Ky. 1988).

KRS 304.49-150(1) specifically exempts captive insurers from the UCSPA: "No provisions of this chapter, other than those contained in KRS 304.49-010 to 304.49-230 or contained in specific references contained in KRS 304.49-010 to 304.49-230, shall apply to captive insurance companies." Because courts "are not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used," we are bound by the clear language in the statute. *Dept. of Revenue, Fin. and Admin. Cabinet v. Wyrick,* 323 S.W.3d 710, 713 (Ky. 2010).

When interpreting a statute, a court should "give effect to the intent of the General Assembly." *Beckham v. Bd. of Educ.,* 873 S.W.2d 575, 577 (Ky. 1994).

> [W]e must look first to the plain language of a statute and, if the language is clear, our inquiry ends. We hold fast to the rule of construction that the plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source. In other words, we assume that the Legislature meant exactly what it said, and said exactly what it meant.

11

*University of Louisville v. Rothstein,* 532 S.W.3d 644, 648 (Ky. 2017) (citations and quotations omitted).  Turning to the plain language of KRS 304.49-150, our inquiry is brief.

The language in KRS 304.49-150(1) is unequivocal.  No provisions of the insurance code apply to captive insurers except for the statutes contained in the captive insurer subchapter, KRS 304 subchapter 49.  This clearly means the UCSPA, which is codified in subchapter 12 at KRS 304.12-230, does not apply to a captive insurer.  Because First Initiatives is a captive insurer, it is not bound by the UCSPA and not subject to liability for any violations thereof.  The Legislature specifically chose to exempt captive insurers from the UCSPA and this Court cannot override that legislative intent.  "There is no reason for us . . . to impose a constraint unintended or unexpressed by the General Assembly."  *Rothstein,* 532 S.W.3d at 651.  Given that the language and intent of the Legislature are clear, the trial court properly concluded that First Initiatives is a captive insurer exempt from the provisions of the UCSPA.  Therefore, the trial court did not err in denying Merritt's motion for declaratory judgment.

### III.   First Initiatives is not engaged in the "business of insurance" so Merritt's KRS 304.49-230 argument fails.

In his motion to reconsider the denial of the requested declaratory judgment, Merritt raised an argument based on KRS 304.49-230.  As noted above, KRS 304.49-150(1) limits the applicability of the Kentucky Insurance Code where a captive insurer is involved: "No provisions of this chapter, other than those contained in KRS 304.49-010 to 304.49-230 or contained in specific references contained in KRS 304.49-010 to 304.49-230, shall apply to captive

insurance companies." In essence, captive insurers are only subject to subtitle 49 or to particular provisions referenced in subtitle 49. But Merritt insists that First Initiatives does not qualify for the exclusion outlined in KRS 304.49-150(1), i.e., does not get to claim exclusion from all other parts of the insurance code, because KRS 304.49-230 applies. That statute states: "This subtitle shall not apply to any foreign captive insurer lawfully transacting the **business of insurance** in Kentucky prior to July 14, 2000, unless the foreign captive insurer petitions the commissioner requesting that this subtitle be applicable to the foreign captive insurer." (Emphasis added.)

Merritt reasons that First Initiatives, a foreign captive insurer, was transacting the business of insurance in Kentucky when it began insuring Catholic Health entities in 1998, well prior to July 14, 2000; First Initiatives never petitioned the commissioner with a request that subtitle 49 apply to it; consequently, subtitle 49 does not apply, leaving First Initiatives without the benefit of the language in KRS 304.49-150(1) that would have otherwise exempted it from all other parts of the insurance code including the UCSPA. This argument is flawed because, as both the trial court and the Court of Appeals correctly determined, First Initiatives was never "transacting the business of insurance in Kentucky." KRS 309.49-230.

KRS 304.1-030 defines insurance as "a contract whereby one undertakes to pay or indemnify another as to loss from certain specified contingencies or perils called 'risks,' or to pay or grant a specified amount or determinable benefit or annuity in connection with ascertainable risk contingencies, or to act as surety." An insurance contract "is a contract of indemnity whereby the insurer agrees to indemnify the insured for any loss resulting from a specific

13

event. The insurer undertakes the obligation based on an evaluation of the market's wide risks and losses." *Buck Run Baptist Church, Inc. v. Cumberland Sur. Ins. Co.,* 983 S.W.2d 501, 504 (Ky. 1998). An insurer expects losses, and they are spread through the market by means of a premium. *Id.* at 504-05. An entity is transacting the business of insurance when it enters into insurance contracts. In *Davidson,* 25 S.W.3d at 102, this Court held that the Legislature did not intend to subject self-insured entities to the requirements of the Kentucky Insurance Code and stated specifically that "the UCSPA . . . appl[ies] only to those persons or entities (and their agents) who are 'engaged . . . in the business of entering into contracts of insurance.'" (quoting KRS 304.1-040). Self-insurers are not in the business of entering into contracts of insurance but rather have a self-insurance agreement with covered entities, in this case Catholic Health and its affiliates.

As often noted, insurance "involves (1) risk shifting and (2) risk distribution." *Humana, Inc. v. Comm'r,* 881 F.2d 247, 251 (6th Cir. 1989). In *Commonwealth v. Reinhold,* 325 S.W.3d 272 (Ky. 2010), this Court held that "the shifting of risk from one party to another [is] a necessary component of an insurance contract. The United States Supreme Court agrees with this principle, describing insurance as 'an arrangement for transferring and distributing risk.'" (quoting *Grp. Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 211 (1979)).

Self-insurance does not have the necessary characteristics of risk shifting and risk distribution. "A self-insurer and an insurer are not the same" because a self-insurer "does not engage in risk shifting." *Haney v. Yates,* 40 S.W.3d 352, 355 (Ky. 2000). The parent of a captive insurer, like Catholic

14

Health in this case, "retains an economic stake in whether a covered loss occurs." *Clougherty Packing Co. v. Comm'r,* 811 F.2d 1297, 1307 (9th Cir. 1987). Therefore, an agreement between a parent and a captive insurer does not shift the risk of loss. *Id.*[4]

In short, First Initiatives is not in the business of insurance, but rather provides captive self-insurance for Catholic Health. There is no risk shifting and risk distribution. Catholic Health retains the entire financial stake in the self-insured, professional liability claims paid to claimants. Thus, in this case, any liability for the deaths of Kimberly and Harold Merritt, III, remained with Catholic Health. A self-insurance arrangement such as the one involved here is not a contract of insurance. Neither KentuckyOne nor Dr. Smith paid premiums to Catholic Health or First Initiatives, nor did they purchase insurance policies from same. One self-insurance agreement covers all of Catholic Health's subsidiaries and their employees for employment-related conduct. With these facts, under Kentucky law and general principles of insurance law, First Initiatives indisputably is not in the business of insurance. Because First Initiatives was never "transacting the business of insurance in

---

[4] Many federal courts have similarly held that captive insurance agreements do not shift or distribute the risk of loss. *See Gulf Oil Co. v. Comm'r,* 914 F.2d 396, 412 (3d Cir. 1990) (holding that a parent's captive insurance arrangement was not an insurance agreement when "the captive was wholly owned by its parent, and the captive insured risks only within the affiliated group, the risk is not truly distributed."); *Humana,* 881 F.2d at 251 (holding that Humana did not shift the risk to Health Care Indemnity, its wholly owned subsidiary, in its captive insurance arrangement.); *Beech Aircraft Corp. v. U.S.,* 797 F.2d 920, 922 (10th Cir. 1986) ("Self-insurance is not the equivalent of insurance. If one having an insurable risk retains the risk of his own loss, there is no risk transfer, and the arrangement is self-insurance."); *Stearns-Roger Corp. v. U.S.,* 774 F.2d 414, 415 (10th Cir. 1985) (explaining that where the ultimate burden for losses was always on the parent, there is no risk shifting).

Kentucky", KRS 304.49-230 does not apply and First Initiatives had no obligation to petition the insurance commissioner in order to qualify for exemption from the UCSPA.

## IV. Any additional discovery should have been requested prior to the motion for declaratory judgment.

Finally, Merritt argues that the trial court should have allowed additional discovery relevant to First Initiatives' status as an insurer. In his view, if the trial court disagreed that Merritt had presented sufficient evidence to establish that First Initiatives is in the business of insurance, the court should have allowed Merritt time for additional discovery before granting summary judgment to First Initiatives and Catholic Health. Merritt notes that he relied on publicly-sourced information, the statements of opposing counsel, and the affidavit of Phillip L. Foster in presenting an argument that he believes adequately demonstrates that First Initiatives was and is engaged in the business of insurance. Obviously, the trial court disagreed. Only after that court denied the requested declaratory judgment did Merritt claim the need for additional discovery.

An appellate court reviews a trial court's determination regarding discovery issues under an abuse of discretion standard. *S. Fin. Life Ins. Co. v. Combs,* 413 S.W.3d 921, 932 (Ky. 2013). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999).

Approximately five weeks after filing the complaint, Merritt sought a judicial declaration of the applicability of the UCSPA to First Initiatives. That

was a procedural decision he made in the conduct of the litigation. If Merritt believed the information he possessed up to that point was insufficient to determine First Initiatives' status or relationship with Catholic Health then he could have proceeded with discovery and delayed his request for declaratory judgment. By moving for declaratory judgment early in the litigation, Merritt represented that a justiciable issue, "an actual controversy," existed and that it was time for the trial court to "make a binding declaration of rights . . . ." KRS 418.040. He repeatedly insisted that this particular issue was ripe for decision, expressing no need for additional time to conduct discovery. Allowing discovery after the trial court's denial of declaratory judgment would be contrary to these numerous representations that the UCSPA issue was ripe for a ruling. More pointedly, no amount of additional discovery will change the fact that the UCSPA does not apply to captive insurers like First Initiatives. Accordingly, the trial court did not err in denying Merritt's post-ruling request to conduct additional discovery.

### CONCLUSION

To summarize, the language in KRS 304.49-150(1) specifically exempts captive insurers such as First Initiatives from the UCSPA. Merritt's argument that KRS 304.49-230 deprives First Initiatives of the benefit of the KRS 304.49-150(1) exemption fails because First Initiatives was never transacting the business of insurance in Kentucky. For the foregoing reasons, we affirm the Court of Appeals.

All sitting. All concur.

17

COUNSEL FOR APPELLANTS:

J. Dale Golden
Kellie Marie Collins
Mary Lauren Melton
GOLDEN LAW OFFICE, PLLC


COUNSEL FOR APPELLEES:

Bryan Todd Thompson
Chad Owens Propst
THOMPSON MILLER & SIMPSON PLC


COUNSEL FOR AMICUS CURIAE,
KENTUCKY DEFENSE COUNSEL,
INC.:

William Baxter Orberson, Jr.
John Clifford Phillips
PHILLIPS PARKER ORBERSON & ARNETT PLC